UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In the Matter of the Arbitration Between<br><br>THE FAIRCHILD CORPORATION<br><br>          Petitioner and Cross-Respondent,<br><br>       vs.<br><br>ALCOA INC.<br><br>      Respondent and Cross-Petitioner. | ECF<br><br>07-CV 6185 (VM)<br><br>Oral Argument Requested |

**ALCOA INC.'S MEMORANDUM OF LAW IN OPPOSITION TO THE FAIRCHILD CORPORATION'S PETITION TO VACATE ARBITRATION AWARD AND IN SUPPORT OF THE CROSS-PETITION OF ALCOA INC. TO CONFIRM ARBITRATION AWARD**

Evan R. Chesler
Daniel Slifkin
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475
(212) 474-1000

*Attorneys for Respondent and Cross-Petitioner Alcoa Inc.*

July 17, 2007

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ......................................................................................... 4

ARGUMENT ............................................................................................................. 9

    I.      FAIRCHILD'S PETITION TO VACATE THE ARBITRATION
           AWARD IS MERITLESS AND SHOULD BE DENIED. ................................. 9

          A.     Judge Stapleton Is Not Guilty of Misconduct. ........................................... 10

                1.     Fairchild Misapplies Section 10(a)(3). ......................................... 11

                2.     Judge Stapleton's Decision and Award Was Based on
                       Extensive Evidence of Alcoa's Actual Damages .......................... 13

          B.     Fairchild Has Failed To Demonstrate "Serious Errors" in the
                Decision. .................................................................................................. 16

          C.     Fairchild Has Not Established that the Arbitration Was
                Fundamentally Unfair. .............................................................................. 19

    II.     THIS COURT SHOULD CONFIRM THE AWARD AND ENTER
           JUDGMENT AGAINST FAIRCHILD FOR $12,455,585.88—$8,450,000
           TO BE SATISFIED BY THE RESERVE AND $4,005,585.88 TO BE
           PAID FROM THE ESCROW ACCOUNT. ......................................................... 20

    III.    THE COURT SHOULD AWARD ALCOA ATTORNEY'S FEES AND
           PREJUDGMENT INTEREST. .......................................................................... 23

CONCLUSION ....................................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

Areca, Inc. v. Oppenheimer & Co., Inc., 960 F. Supp. 52 (S.D.N.Y. 1997) ................... 10, 16, 19

AT&T Corp. v. Tyco Telecomms. (U.S.) Inc., 255 F. Supp. 2d 294 (S.D.N.Y. 2003) ............................................................................................................. 10, 19

Banco de Seguros del Estado v. Mut. Marine Office, Inc., 344 F.3d 255 (2d Cir. 2003) ............................................................................................................. 17

Commonwealth Constr. Co. v. Cornerstone Fellowship Baptist Church, Inc., C.A., No. 04L-10-101 RRC, 2006 Del. Super. LEXIS 411 (Oct. 3, 2006) ...................... 25

Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383 (2d Cir. 2003) ............................................................................................................. 9

The Evangelical Alliance Mission/Nihon Domei Kirisuto Kyodan v. Lockman Found., No. 95 Civ. 7214 (SHS), 1995 WL 688958 (S.D.N.Y. Nov. 21, 1995)…………………………………22

Florasynth, Inc. v. Pickholz, 750 F.2d 171 (2d Cir. 1984) ......................................... 21

Folkways Music Publishers, Inc. v. Weiss, 989 F.2d 108 (2d Cir. 1993) ................... 17

Getko Group, Inc. v. Amica Mut. Ins. Co., No. 03 Civ. 5876 (VM), 2003 WL 22455303 (S.D.N.Y. Oct. 28, 2003) ....................................................... 21

Herrenknecht Corp. v. Best Road Boring, No. 06 Civ 5106 (JFK), 2007 WL 1149122 (S.D.N.Y. Apr. 16, 2007) .......................................... 21, 23, 24

Home Indem. Co. v. Affiliated Food Distrib., Inc., 96 Civ. 9707, 1997 WL 773712 (S.D.N.Y. Dec. 12, 1997) .................................................... 11

Hunt v. Commodity Haulage Corp., 647 F. Supp. 797 (E.D.N.Y. 1986) ................... 23

InterChem Asia 2000 Pte. Ltd. v. Oceana Petrochemicals AG, 373 F. Supp. 2d 340 (S.D.N.Y. 2005) ......................................................... 10, 16, 21

Mallory Factor Inc. & West Coast Entm't Corp., No. 99 Civ. 4819 (JFK), 1999 WL 1021076 (S.D.N.Y. Nov. 9, 1999) ............................................. 12, 19

Merrill Lynch, Pierce, Fenner & Smith Inc. v. Savino, No. 06 Civ. 868 (LAP), 2007 WL 895767 (S.D.N.Y. Mar 23, 2007) ........................................... 17

Motion Picture Lab. Technicians Local 780 v. McGregor & Werner, Inc., 804 F.2d 16 (2d Cir. 1986) ......................................................................... 21

Odfjell ASA v. Celanese AG, 380 F. Supp. 2d 297 (S.D.N.Y. 2005) ........................................... 12

Ono Pharm. Co. v. Cortech, Inc., No. 03 Civ 5840 SAS, 2003 WL 22481379
    (S.D.N.Y. Nov. 3, 2003) ........................................................................................ 20

Pompano-Windy City Partners v. Bear Stearns & Co., 794 F. Supp. 1265
    (S.D.N.Y. 1992) ..................................................................................................... 16

Saudi Iron & Steel Co. v. Stemcor USA Inc., No. 97 CIV. 5976 (DLC), 1997 U.S.
    Dist. LEXIS 20336 (S.D.N.Y. Dec. 22, 1997) .......................................................... 24

Serv. Employees Int'l Union, Local 32BJ, AFL-CIO v. Stone Park Assocs., LLC,
    326 F. Supp. 2d 550 (S.D.N.Y. 2004) ...................................................................... 24

St. Mary Home, Inc. v. Serv. Employees Int'l Union, Dist. 1199, 116 F.3d 41 (2d
    Cir. 1997) ............................................................................................................... 17

Teamsters, Chauffeurs, Warehousemen and Helpers, Local Union No. 506 v. E.D.
    Clapp Corp., 551 F. Supp. 570 (N.D.N.Y. 1982) ..................................................... 11

Tempo Shain Corp. v. Bertek, Inc., 120 F.3d 16 (2d Cir. 1997) ................................. 11

Trade & Transport, Inc. v. Nat'l Petroleum Charterers Inc., 738 F. Supp. 789
    (S.D.N.Y. 1990) ..................................................................................................... 10

Tucker v. Am. Bldg. Maint., 451 F. Supp. 2d 591 (S.D.N.Y. 2006) ........................... 16

U.S. Offshore, Inc. v. Seabulk Offshore, Ltd., 753 F. Supp. 86 (S.D.N.Y. 1990) ....... 24

Wallace v. Buttar, 378 F.3d 182 (2d Cir. 2004) ............................................. 10, 16, 21

Westchester Fire Ins. Co. v. Massamont Ins. Agency, Inc., 420 F. Supp. 2d 223
    (S.D.N.Y. 2005) ..................................................................................................... 24

**Statutes and Rules**

9 U.S.C. § 9 ............................................................................................................. 1, 21

9 U.S.C. § 10 .......................................................................................................... 9, 10

6 Del. C. § 2301 ......................................................................................................... 25

Petitioner Alcoa Inc. submits this memorandum in opposition to The Fairchild Corporation's Petition to Vacate Arbitration Award and in support of Alcoa Inc.'s cross-petition, pursuant to 9 U.S.C. § 9, to confirm the June 21, 2007, Arbitration Decision and Award in Fairchild Corp. v. Alcoa Inc., CPR File No. G-06-22H (June 21, 2007) (Stapleton, Arb.).

## PRELIMINARY STATEMENT

On July 3, 2007, Petitioner The Fairchild Corporation ("Fairchild") burdened this Court and Alcoa with a patently frivolous petition to vacate an award entered as the result of an arbitration Fairchild itself sought. Fairchild's petition relies on factual assertions that are demonstrably false. The petition also cites purported "serious errors" by the Arbitrator as a basis for seeking vacatur, despite the fact no such error occurred, and under this Court's clear precedent, "serious errors" are not grounds for overturning an arbitrator's award. Fairchild's petition is nothing more than an attempt to harass Alcoa by reasserting arguments that have already been rejected, thereby causing an unnecessary delay in Alcoa's recovery and a needless increase in its legal costs.

This action, however, is only the latest example of Fairchild's continuing refusal to honor its contractual obligations to indemnify Alcoa for certain environmental, health and safety expenditures at several industrial facilities that Alcoa purchased from Fairchild in 2002. After Fairchild refused to pay Alcoa for any of its claims (even though Fairchild, itself, had an accounting reserve for millions of dollars in anticipated environmental, health and safety related liabilities at those facilities), the parties engaged in an 18-month-long mediation and arbitration process. Three weeks ago, the arbitrator issued a 48-page Arbitration Decision and Award that rejected nearly all of Fairchild's arguments, unconditionally awarded Alcoa reimbursement for over $12 million in indemnifiable expenses (comprised of over $8 million from a reserve account

1

and more than $4 million from an escrow account set up by the parties) and provides clear groundrules for indemnification of future expenses. "Based upon all of the evidence", the arbitrator observed, "it appears that Fairchild made a calculated decision to deny all liability on these indemnification claims and fight the battle in the arbitration hearing". (Award at 16, Affidavit of Tammy L. Roy in Support of the Fairchild Corporation's Petition to Vacate Arbitration Award ("Roy Aff.") Ex. 5.) Having fought that battle and lost, Fairchild has opened a new front by challenging the result of the arbitration it initiated.

Fairchild asserts two purported grounds for vacating the Arbitration Decision and Award. First, Fairchild claims that the arbitrator, former Connecticut Superior Court Judge James Stapleton, is guilty of misconduct because he did not require Alcoa to offer into evidence at the hearing every single invoice and receipt relating to its 204 separate claims for indemnification. That argument is wrong on the facts and on the law. Fairchild's underlying contention that Alcoa "fail[ed] to provide any evidence" that it spent the money for which it claimed indemnification is demonstrably untrue. Alcoa sent Fairchild copies of invoices relating to its claimed expenses long before the arbitration began, produced those invoices to Fairchild during extensive discovery and introduced a wealth of documentary and testimonial evidence of its damages at the arbitration hearing itself. Any assertion to the contrary is an absolute fiction. Fairchild had ample opportunity to review, challenge and cross-examine Alcoa witnesses with that evidence. Further, when Alcoa offered to provide Judge Stapleton with a 14-volume set of all of the invoices and receipts that had been produced to Fairchild (and which Fairchild chose not to use during the hearing), Fairchild itself objected. (See Ltr. from A. Zurofsky to J. Stapleton dated May 2, 2007 at 3, Roy Aff. Ex. 11.) In other words, Fairchild comes before this Court accusing Judge Stapleton of misconduct in refusing to receive or consider the very

evidence that Fairchild urged Judge Stapleton not to receive or consider in the first place, related

to an issue on which there was more than ample evidence in any event.

Second, Fairchild complains that the award is based on "numerous serious errors"

because it supposedly ignores certain of Fairchild's evidence and arguments. As Fairchild must

know, no court has recognized "serious error" as a valid basis for vacating an arbitration award.

And in any event, Fairchild's allegations of "serious error" have no merit.

In short, Fairchild has failed to demonstrate, because it cannot demonstrate, that the

proceedings were in any way fundamentally unfair—which is the essential prerequisite for vacatur.

Fairchild's petition is no more than a litany of meritless quarrels with the arbitrator's factual

conclusions designed further to delay compliance with its indemnification obligations. There is no

basis for this Court to overturn the arbitral award, and Fairchild's petition should be rejected.

Fairchild has also gone further, and has directly interfered with the release of the

arbitration award to Alcoa—in violation of the explicit terms of the parties' escrow agreement—

by instructing the escrow agent that "no funds should be dispersed from the Escrow Account".

(Ltrs. from A. Zurofsky to J. Osborn dated June 28, 2007 and June 29, 2007, Declaration of

Daniel Slifkin in Support of Alcoa Inc.'s Cross-Petition to Confirm Arbitration Award and

Memorandum of Law in Opposition to The Fairchild Corporation's Petition to Vacate

Arbitration Award and in Support of the Cross-Petition of Alcoa Inc. to Confirm Arbitration

Award ("Slifkin Decl.") Exs. R, U.) Fairchild represented to the escrow agent that the

arbitrator's unconditional award "represents only one step" in determining the amounts to which

Alcoa is entitled, and that the award supposedly may be reduced by certain potential tax benefits

that accrued to Alcoa. Fairchild even wrote to Alcoa to propose a second round of mediation and

arbitration relating to the exact same claims that were just decided. As with its petition,

Fairchild's motivation for raising that argument can only be to delay satisfaction of Alcoa's claims and to relitigate its losing arguments.  Alcoa accordingly cross-petitions for confirmation of and judgment upon the award, as well as for prejudgment interest, attorney's fees and costs.

## STATEMENT OF FACTS

### The Underlying Dispute Between the Parties

On July 16, 2002, Fairchild sold the bulk of its aerospace fastener business to Alcoa for approximately $657 million.  (See Acquisition Agreement among Alcoa Inc., The Fairchild Corporation, Fairchild Holding Corp. and Sheepdog, Inc. ("Acquisition Agreement" or "Agreement") §§ 1.30, 2.3, Roy Aff. Ex. 1.)  In the course of negotiating the transaction, Alcoa performed due diligence on Fairchild's facilities and identified numerous instances of actual or potential non-compliance with environmental and workplace health and safety laws.  The parties subsequently agreed that Fairchild would indemnify Alcoa for certain liabilities to the extent that they exceeded an $8.45 million accounting reserve. (Id. §§ 3.24(g)(ii), 11.2, 11.6.)[1]  The parties also agreed that $25 million of the purchase price would be placed in an escrow account from which indemnification payments could be drawn.  (Id. § 2.4.)[2]

Alcoa and Fairchild included an arbitration clause in the Agreement that outlines the procedures governing all disputes arising "in connection with determining the validity or amount of a claim for indemnification for an Indemnifiable Loss".  (Id. § 11.7.)  The parties agreed first to mediate such disputes and, if such mediation proved unsuccessful, to settle

---

[1] That accounting reserve had been maintained by Fairchild and reflected material, known liabilities.  Alcoa assumed the reserve in the acquisition.  (See id. §§ 1.26, 11.2(a)(iv), 11.6(a).)

[2] Although indemnification payments may be drawn from the escrow account, Fairchild is directly responsible for indemnification payments if the escrow funds are insufficient.  (Escrow Agreement between The Fairchild Corporation and Alcoa Inc. § 4(b)(iv), Alcoa Arb. Ex. 247, Slifkin Decl. Ex. A; see also Acquisition Agreement §§ 11.6, Roy Aff. Ex. 1.)

disputes "finally by arbitration under the CPR Rules for Non-Administered Arbitration".  (Id.)
The parties also agreed that "[t]he arbitration will be governed by the Federal Arbitration Act"
and that "[t]he award of the arbitrator shall be final and binding on the parties and judgment
upon the award may be entered and enforced in any court having jurisdiction".  (Id.)

From the closing date through September 2006, Alcoa submitted 204 claims,
totaling more than $16.3 million, for costs incurred addressing environmental and health and
safety liabilities at the former Fairchild facilities.  (Ltr. from J. Lease to J. Osborn, dated Dec. 19,
2006, at 11, Roy Aff. Ex. 2.)  Fairchild rejected every single claim.  (See Fairchild's Petition to
Vacate Arbitration Award ("Fairchild Pet.") ¶ 5.)  Fairchild asserted a variety of justifications for
refusing to indemnify Alcoa for any of its expenses, including that:

- As a matter of contract, Alcoa's claims for workplace health and safety liabilities were
  not subject to indemnification;

- As a matter of contract, Alcoa's claims for environmental investigations were not subject
  to indemnification unless they were explicitly ordered by regulatory authorities;

- Alcoa purportedly failed to provide Fairchild with adequate notice and opportunity to
  comment on corrective actions (including corrective actions that Fairchild contended
  were not subject to indemnification in the first place); and

- Alcoa's claims should be offset by tax benefits Alcoa received as a result of net operating
  losses previously incurred by Fairchild.

(See generally Fairchild's Post-Hearing Br., Roy Aff. Ex. 23.)

Pursuant to the Agreement, Alcoa and Fairchild mediated the dispute.  When
mediation was unsuccessful, the parties proceeded to binding arbitration.

**The Arbitration Proceedings**

Fairchild served its Notice of Arbitration on July 20, 2005.  Unable to agree on an
arbitrator, the parties received a list from the International Institute for Conflict Prevention &
Resolution and ranked candidates by preference.  In this manner, the parties selected the

Honorable James F. Stapleton.  Judge Stapleton is a former judge of the Connecticut Superior

Court and a Fellow and Past Regent of the American College of Trial Lawyers.  He has over

forty years of experience as a trial lawyer and judge.

        Alcoa and Fairchild engaged in seven months of pre-hearing discovery.  They

deposed more than two dozen witnesses based in the United States, France and Hungary.  Alcoa

answered written interrogatories and produced almost 200,000 pages of documents, including the

invoices, receipts and other financial documentation relevant to its claims for indemnification.

When demanded by one of Fairchild's interrogatories to "[i]dentify, on an invoice by invoice

basis, each and every claimed Fastener Environmental Liability for which Alcoa seeks

indemnification from Fairchild" (Fairchild's First Set of Interrogs., Interrog. No. 1, at 5, Slifkin

Decl. Ex. H), Alcoa properly objected on the ground that it was unduly burdensome and

cumulative and sought information from documents already produced (see Alcoa Inc.'s Resps.

and Objections to Fairchild's First Set of Interrogs., Resp. to Interrog. No. 1, Roy Aff. Ex. 10.).

Nevertheless, Alcoa identified for Fairchild, by Bates number, numerous examples of responsive

documents in Alcoa's production, including a chart listing each of Alcoa's claims and the

amounts spent to date.  (See id.)  For example, Alcoa pointed Fairchild specifically to "invoices,

receipts or other documentation reflecting expenses incurred . . . generally located in Alcoa's

production at the following Bates ranges:  FAIR00035418-00038156, FAIR50000176-

FAIR50000219, FAIR5002041-FAIR5002461, FAIR50003692-FAIR50007098,

FAIR50014707-FAIR50016753 and FAIR50017956-FAIR50020383".  (Id.)

        At the close of discovery, Alcoa moved for partial summary judgment.  (Alcoa's

Motion for Partial Summary Judgment, dated December 1, 2006, Slifkin Decl. Ex. I.)  Fairchild

opposed the motion and Judge Stapleton issued an interim decision in which he concluded, after

careful analysis of the Agreement, that ambiguity in the relevant contractual provisions and other questions of material fact precluded summary judgment. (Interim Decision, Roy Aff. Ex. 18.)

The arbitration hearing was held in New York from January 8, 2007, through January 12, 2007, and from February 26, 2007, through March 1, 2007. Judge Stapleton heard live testimony from 18 witnesses—including nine experts—and received over 250 exhibits into evidence. The parties gave opening statements, introduced expert testimony and were permitted extensive cross-examination of adverse witnesses. After the hearing concluded, Judge Stapleton permitted the parties to submit post-hearing briefs and proposed findings of fact and conclusions of law, as well as responsive briefs and findings of fact and conclusions of law. Those submissions totaled nearly 300 pages. (See, e.g., Alcoa's Post-Hearing Br., Slifkin Decl. Ex. M; Fairchild's Post-Hearing Br., Roy Aff. Ex. 23.) Judge Stapleton also received thousands of pages of deposition designations.

In its reply to Alcoa's post-hearing memorandum—i.e., in what was to be the last of the parties' submissions—Fairchild argued, for the first time, that Alcoa failed to prove the actual expenditure of the $16.3 million claimed. (Fairchild Reply Br. at 4-8, Roy Aff. Ex. 4.) Alcoa responded in a letter to Judge Stapleton, citing the record evidence supporting its claimed expenditures but nonetheless offering to provide the Judge a copy of the 14 volumes of relevant invoices and receipts that it had produced to Fairchild during discovery. (See Ltr. from E. Chesler to Hon. J. Stapleton dated May 1, 2007, Roy Aff. Ex. 14; see also Ltr. from E. Chesler to Hon. J. Stapleton, dated May 3, 2007, Slifkin Decl. Ex. P.) Notably, Fairchild wrote to Judge Stapleton to object to his reviewing the very evidence that Fairchild now contends he improperly "refused to receive or consider". (See Ltr. from A. Zurofsky to J. Stapleton dated May 2, 2007 at 3, Roy Aff. Ex. 11.) Judge Stapleton declined Alcoa's offer of additional documentation.

7

**The Arbitration Decision and Award**

On June 21, 2007, Judge Stapleton issued a 22-page Arbitration Decision and Award (the "Award") that appended 24 pages of additional Findings of Fact and Conclusions of Law.  (Award, Roy Aff. Ex. 5.)  The Award rejects virtually every legal argument that Fairchild advanced during the arbitration.  Specifically, Judge Stapleton concluded that:

- Alcoa's workplace health and safety claims are subject to indemnification, because an analysis of the contractual language and extrinsic evidence established that "'workplace health and safety' was used in its usual sense and meaning which included machine guarding, equipment safety, fall protection and similar issues" (id. at 6, 21-22);

- With certain specific exceptions, Alcoa's environmental investigations were subject to indemnification, including those that were not specifically required by regulators (id. at 6-7);

- With the exception of certain projects, "all of the compliance and remediation work performed by Alcoa and for which it seeks indemnification" was "necessary, commercially reasonable and performed at reasonable cost" (id. at 10, 21-22); and

- Fairchild's argument that its notice and participation rights were violated failed because "[t]o the extent there are technical violations of Fairchild's right to notice and participation under the environmental indemnity provisions of the Agreement, Fairchild suffered no harm or damage as a result" (id. at 16-17).

However, Judge Stapleton did not find entirely in favor of Alcoa.  The Judge rejected $3,303,683.48 of the $16,385,463.92 damages claim after analyzing Alcoa's corrective actions one by one and concluding that certain expenses were not indemnifiable, either because they reflected unnecessary investigations (see, e.g., id. at 7-10) or because they included work that was not necessary, not commercially reasonable or not performed at reasonable cost (see, e.g., id. at 10-13).  In addition, Judge Stapleton concluded that under the Agreement, Fairchild was entitled to a credit of $264,106.92 because of tax benefits Alcoa received as a result of the transaction, as well as a "conditional" credit of $926,565.13 for certain pending tax benefits.  (Id. at 17, 21-22.)  After reducing Fairchild's obligation by those amounts, Judge Stapleton ordered the $8.45 million reserve reduced to zero and held that "Alcoa is entitled to receive the amount

of $4,005,585.88 from the Escrow Account payable in full within thirty days of the date of this Award". (<u>Id.</u> at 22.) He further ordered that: "All claims and counterclaims not expressly awarded or referred to herein are hereby denied. This Award is in full settlement of all claims and counterclaims submitted in this arbitration." (<u>Id.</u>)

Fairchild quickly moved to block the release of the award by representing to the escrow agent, the J.P. Morgan Trust Company, that it should not disburse any funds until the award is reduced by additional credits Fairchild now contends (for the first time) it is entitled to receive against the same claims arbitrated before Judge Stapleton. (Ltrs. from A. Zurofsky to J. Osborn dated June 28, 2007 and June 29, 2007, Slifkin Decl. Exs. R and U.)[3] Fairchild also wrote to Alcoa to propose another round of mediation and arbitration, attempting to rearbitrate the very same claims as a purportedly new, "unadjudicated dispute over the amount of indemnification owed by Fairchild to Alcoa". (Ltr. from A. Zurofsky to D. Slifkin dated June 29, 2007, Slifkin Decl. Ex. V.) No funds have been distributed from the escrow account.

## ARGUMENT

## I.    FAIRCHILD'S PETITION TO VACATE THE ARBITRATION AWARD IS MERITLESS AND SHOULD BE DENIED.

Federal courts grant great deference to arbitration decisions. "A party petitioning a federal court to vacate an arbitral award bears the heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law". <u>Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S</u>, 333 F.3d 383, 388 (2d Cir. 2003). The statutory grounds of § 10(a) of the Federal Arbitration Act ("FAA") uniformly "involve corruption, fraud,

---

[3] Fairchild contacted the escrow agent even before Alcoa sent a copy of the Award to the escrow agent to request disbursement. (Ltr. from J. Lease to J. Osborn, dated June 28, 2007, at 1-2, Slifkin Decl. Ex. S.)

or some other impropriety on the part of the arbitrators", id.—in other words, "outright perfidy

on the part of the arbitrators".  Wallace v. Buttar, 378 F.3d 182, 189 (2d Cir. 2004).  This Circuit

recognizes one additional ground for vacatur—manifest disregard of the law—but as this Court

has observed, "[t]he showing required to vacate an arbitration award on the basis of manifest

disregard for the law is exceptionally high".  InterChem Asia 2000 Pte. Ltd. v. Oceana

Petrochemicals AG, 373 F. Supp. 2d 340, 349 (S.D.N.Y. 2005) (Marrero, J.).

Fairchild has not even attempted to offer any facts that show Judge Stapleton

committed misconduct or made any errors, or that the proceedings were unfair.  All Fairchild has

done is parrot the language of § 10(a)(3) and attempt to mislead this Court with blatant

mischaracterizations of the record.  Fairchild's arguments are frivolous and must be rejected.

### A.    Judge Stapleton Is Not Guilty of Misconduct.

Fairchild argues that Judge Stapleton's decision must be overturned pursuant to 9

U.S.C. § 10(a)(3), which provides that a court may vacate an arbitration award "where the

arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to

the controversy".  Such misconduct "must amount to a denial of fundamental fairness of the

arbitration proceeding to warrant vacating the award".  AT&T Corp. v. Tyco Telecomms. (U.S.)

Inc., 255 F. Supp. 2d 294, 303 (S.D.N.Y. 2003) (Marrero, J.) (internal quotation marks omitted).

That is because "[i]t is well settled that arbitrators are afforded broad discretion to determine

whether to hear evidence", Areca, Inc. v. Oppenheimer & Co., Inc., 960 F. Supp. 52, 55

(S.D.N.Y. 1997), and to determine "whether additional evidence is necessary or would simply

prolong the proceedings", Trade & Transport, Inc. v. Nat'l Petroleum Charterers Inc., 738

F. Supp. 789, 792 (S.D.N.Y. 1990) (internal quotation marks omitted).

Fairchild argues that Judge Stapleton violated § 10(a)(3) by declining Alcoa's

post-hearing proffer of additional and cumulative evidence—even though, at the time, Fairchild

urged Judge Stapleton not to accept it.  Fairchild also contends—without any basis in fact—that Alcoa consistently refused to produce invoices and receipts to Fairchild, that Alcoa offered no proof of its expenditures and that Alcoa did not actually spend the $16.3 million it sought as indemnification.  (Petitioner's Br. at 4, 7-9.)  Fairchild further contends—again, without any basis in fact—that Judge Stapleton deprived it of the opportunity to test the invoices and Alcoa's claim of actual damage.  (<u>Id.</u> at 4.)  As set forth below, each of those assertions is blatantly false.

## 1.    <u>Fairchild Misapplies Section 10(a)(3).</u>

Fairchild's argument stands § 10(a)(3) on its head.  That provision covers situations in which an arbitrator prevents a party from offering evidence in its possession or from otherwise being heard on an issue critical to its claims or defenses.  It cannot be used as Fairchild attempts to use it—as a means to attack the quality and sufficiency of an opposing party's evidence upon which an arbitrator based his decision.

In the few cases Fairchild cites in which courts overturned awards based on the arbitrator's refusal to hear pertinent and material evidence, <u>the petitioner</u> had been prevented from presenting evidence on a key disputed point.  For example, in <u>Tempo Shain Corp. v. Bertek, Inc.</u>, 120 F.3d 16 (2d Cir. 1997), the Second Circuit determined that an arbitral award should have been vacated because the petitioner, Bertek, was denied the opportunity to offer the testimony of a former employee concerning negotiations in which he had participated.  <u>See id.</u> at 17-18.  Notably, the court concluded that arbitrators must "give each of the parties to the dispute an adequate opportunity to <u>present its evidence and argument</u>".  <u>Id.</u> at 19 (emphasis added).  <u>See also</u> <u>Home Indem. Co. v. Affiliated Food Distrib., Inc.</u>, 96 Civ. 9707, 1997 WL 773712, at *4 (S.D.N.Y. Dec. 12, 1997) (vacating award where ruling prevented petitioner from obtaining any discovery whatsoever for materials petitioner needed to prove its claims and offer defenses); <u>Teamsters, Chauffeurs, Warehousemen and Helpers, Local Union No. 506 v. E.D. Clapp Corp.</u>,

11

551 F. Supp. 570, 578 (N.D.N.Y. 1982) (vacating award where petitioner was not given a "full opportunity to present its case to the arbitrator for consideration" (emphasis added)).[4]

Here, Fairchild is not arguing that it was denied access to or the opportunity to present evidence, but rather that Alcoa did not submit sufficient evidence. That is not only factually incorrect, as discussed infra, but is a misapplication of § 10(a)(3).

Courts have rejected parties' attempts to use § 10(a)(3) to attack the sufficiency of an adversary's evidence or to demand additional evidence. In a case directly on point, Mallory Factor Inc. & West Coast Entm't Corp., respondent West Coast opposed confirmation of an arbitration award and cross-petitioned for vacatur on the ground that the arbitrator refused to order its adversary, MFI, to produce invoices that it claimed West Coast had failed to pay. No. 99 Civ. 4819 (JFK), 1999 WL 1021076, at *1 (S.D.N.Y. Nov. 9, 1999). The Court observed that "it is not clear that § 10(a)(3) applies in this context because West Coast was denied further discovery of documents that MFI claims to have already produced—West Coast was not prevented from presenting 'pertinent evidence' in its possession at the hearing". Id. at *3. West Coast's petition was ultimately rejected because there was no indication that the hearing was fundamentally unfair. Id.

Insofar as Fairchild may be arguing that it was prevented from demonstrating Alcoa's lack of actual damages because Judge Stapleton did not demand that the invoices be produced (see Petitioner's Br. at 4), that argument fails because the invoices were produced and were in Fairchild's possession prior to the hearing. (See supra, Statement of Facts at 6.)

---

[4] Fairchild also cites Odfjell ASA v. Celanese AG, 380 F. Supp. 2d 297 (S.D.N.Y. 2005), but that case does not support the application of § 10(a)(3) here. Odfjell involved an interlocutory motion to compel a party to follow an arbitration panel's ruling on a question of privilege; it did not involve a petition to vacate an award or a claim that the arbitration panel had committed any misconduct. See id. at 298, 300-01.

Fairchild therefore had ample opportunity to contest Alcoa's proof of damages in pre-hearing submissions, during the arbitration hearing and in post-hearing submissions.  The fact that Alcoa did not formally offer into evidence at the hearing every single invoice and receipt for its claims—some of which were as small as a few hundred dollars—did not prevent Fairchild from attacking Alcoa's proof.  Further, Fairchild did argue—albeit belatedly, in its post-hearing reply brief—that Alcoa had failed to prove damages.  Judge Stapleton simply disagreed, stating: "Alcoa has sustained its burden of proof that the expenditures were in fact made in the amounts claimed."  (Award at 21, Roy Aff. Ex. 5.)  That difference of opinion is not indicative of misconduct and is not grounds for vacatur.

### 2.    Judge Stapleton's Decision and Award Was Based on Extensive Evidence of Alcoa's Actual Damages.

Even if § 10(a)(3) could be used to attack the sufficiency of Alcoa's proof of damages, Fairchild fails to provide a colorable basis for overturning the award.  Before and during the arbitration, Alcoa offered ample evidence of the actual expenses it incurred investigating and cleaning up Fairchild's environmental problems and correcting its health and safety violations.  As noted above, that evidence included the invoices, receipts and related documents submitted to Fairchild before the arbitration began, during discovery and during the hearing.[5]  (See, e.g., Ltr. from J. Lease to S. Hall dated Feb. 22, 2006, Alcoa Bulk Arb. Ex. C, Vol. 7 of 22, Roy Aff. Ex. 17; Ltr. from J. Lease to S. Hall dated July 6, 2005, Alcoa Bulk Arb. Ex. C, Vol. 5 at 4931-37, Slifkin Decl. Ex. G; ERM Invoices, Alcoa Arb. Exs. 241, 242, Slifkin

---

[5] Fairchild's suggestion that Alcoa disputed the evidentiary value of these documents (Fairchild Br. at 8-9) is absurd.  The section of the transcript that Fairchild cites to support this contention reflects an objection raised by Alcoa's counsel when one of Fairchild's experts was shown an estimate of potential expenditures for a particular project and testified that it was an invoice for services performed.  (See id.; see also Hearing Tr. at 3145:19-3146:6, Roy Aff. Ex. 9.)  Alcoa's counsel was appropriately objecting on the ground that the witness was not competent to testify about a document he had never seen before.

Decl. Exs. C, D; Ltr. from S. Hall to J. Lease, dated Feb. 25, 2005, at 1, Alcoa Arb. Ex. 103,

Slifkin Decl. Ex. F; see also Ltr. from E. Chesler to Hon. J. Stapleton, dated May 1, 2007, Roy

Aff. Ex. 14 (citing, inter alia, correspondence attaching invoices at Alcoa Bulk Arb. Ex. C,

Vol. 1 at 61-70, 71-114, 136-586, Vol. 2 at 587-793, Vol. 5 at 4342-44, 4511-14).

       That evidence also included extensive testimony from John Lease, the Alcoa

employee responsible for Alcoa's indemnification claim process, who was on the witness stand

for approximately 10 hours over the course of two days.  (See, e.g., Transcript of Arbitration

Hearing ("Tr.") at 902:4-25; 908:3-912:2; 941:6-19; 945:15-23; 984:8-13; 986:2-6; 1107:5-12;

1398:25-1399:10, Slifkin Decl. Ex. J.)  Fairchild argues that Mr. Lease could not and did not

testify about Alcoa's actual damages.  (Petitioner's Br. at 10-11.)  Again, Fairchild is wrong.  For

example, Mr. Lease testified to Alcoa's expenditures in connection with a summary chart which

he confirmed reflected "approximately 90 percent of what we have spent".  (Tr. 907:2-909:19,

Slifkin Decl. Ex. J; see also Alcoa Arb. Ex. 125, Slifkin Decl. Ex. K.)  Notably, when Mr. Lease

later testified that another set of charts that set forth specific dollar figures for each claim,

"reflect liabilities that we had incurred", Judge Stapleton himself sought clarification:

    "THE ARBITRATOR:  What do you mean by liabilities?
    THE WITNESS:  Actual money spent."

(Tr. at 984:11-13, Slifkin Decl. Ex. J; see also Tr. at 986:2-6, Slifkin Decl. J ("THE

ARBITRATOR:  When you say liability, what do you mean by that?  THE WITNESS:

Liability, expended cost, expended funds we had spent for the project")).

       Fairchild had the opportunity to cross-examine Mr. Lease about that testimony or

about any of the hundreds of invoices and related documents that were in Fairchild's possession.

Indeed, Fairchild did cross-examine Alcoa's witnesses about its claimed expenses, based on the

very invoices Fairchild now denies were part of the evidentiary record.  (See, e.g., Tr. 1107:5-12,

Slifkin Decl. Ex. J ("Q.  And then 254 actually is the page I want to look at.  256 is an invoice

from Premiere Safety; right?  A.  Yes it is.  Q.  It is an invoice you are sending to Fairchild for

work done by Premiere Safety; right?  A.  Yes."); see also id. 1185:4-1186:6.)  Further, Fairchild

also examined its own witnesses about those invoices.  (See, e.g., Tr. 2798:22-24, Slifkin Decl.

Ex. L ("Q.  If you look at the attachment, there is a bunch of invoices attached here; right?  A.

Yes.  There are."); id. 2799:19-22 ("Q.  I want to draw your attention to some of the invoices, in

particular.  First off at 183.  A.  183.  I'm there."); id.  2801:25-2802:7 ("Q.  Let's turn to the

invoice that is located at Bates stamp page FAIR 50000199; do you see that?  A.  I do.  Q.  It

appears to be an invoice from Premiere Safety.  A.  It does."); see also id. 2782:11-2783:3;

2803:13-18.)  Judge Stapleton was entitled to conclude that Mr. Lease's testimony, Alcoa's

documentary evidence and the evidence of other testifying witnesses were sufficient proof of

Alcoa's expenditures for its corrective actions.[6]

Judicial review of arbitration records is extraordinarily limited:

> "To the extent that a federal court may look upon the evidentiary record of an
> arbitration proceeding at all, it may do so only for the purpose of discerning
> whether a colorable basis exists for the panel's award so as to assure that the
> award cannot be said to be the result of the panel's manifest disregard of the law.
> A federal court may not conduct a reassessment of the evidentiary record."

---

[6] Fairchild also purports to demonstrate that Alcoa engaged in a pattern of refusing to supply information about the invoices, even prior to the arbitration.  (See Petitioner's Br. at 7-8.) Fairchild's assertion is, once again, incorrect.  Alcoa routinely provided Fairchild with documentation reflecting the work Alcoa performed and the expenses it incurred.  (See, e.g., Ltr. from J. Lease to B. M. Hodge dated November 3, 2003, Alcoa Bulk Arb. Ex. C, Vol. 1 at 61-70, Slifkin Decl. Ex. B; ERM Invoices, Alcoa Bulk Arb. Ex. C, Vol. 5 at 4511-14, Slifkin Decl. Ex. E.)  Fairchild conceded as much in its post-hearing briefing, stating that Alcoa submitted "invoices when the work was done".  (Fairchild Reply Mem. at 1, Roy Aff. Ex. 4.)  Notably, the letters that Fairchild quotes in its petition to support its new argument actually confirm that Fairchild received invoices and receipts from Alcoa.  (See, e.g., Roy Aff. Exs. 3, 7.)  These letters were also introduced into evidence during the arbitration.  Accordingly, when assessing Alcoa's claims for damages, Judge Stapleton had the "evidence" Fairchild now offers of Alcoa's alleged failure to prove its actual expenditures.

<u>Wallace</u>, 378 F.3d at 193 (emphasis in original); <u>see also</u> <u>Tucker v. Am. Bldg. Maint.</u>, 451

F. Supp. 2d 591, 597 (S.D.N.Y. 2006) (Marrero, J.) (noting that the Second Circuit "does not

recognize manifest disregard of the evidence as proper ground for vacating an arbitrator's

award" (internal quotation marks omitted)).  Only the "most egregious error which resulted in

adversely affecting the rights of a party would justify . . . and require vacatur of an award".

<u>Pompano-Windy City Partners, Ltd. v. Bear Stearns & Co.</u>, 794 F. Supp. 1265, 1277 (S.D.N.Y.

1992) (citation omitted).

       Fairchild has wholly failed to satisfy those rigorous standards.  Alcoa presented

ample evidence of its damages.  As described above, Alcoa proved all that it was owed and how

all the figures were derived.  Fairchild was not prevented from attacking that evidence, and was

not prevented from presenting evidence in its possession.  Judge Stapleton's conclusion that he

did not need 14 volumes of item-by-item invoices and receipts in order to assess Alcoa's

damages was entirely proper, and certainly was not an "egregious error".  <u>See</u> <u>Areca</u>, 960

F. Supp. at 55 ("[A]rbitrators need not hear cumulative or irrelevant evidence.").

## B.    Fairchild Has Failed To Demonstrate "Serious Errors" in the Decision.

       Fairchild's second argument for vacatur is the purported existence of "serious

errors" in Judge Stapleton's ruling.  (<u>See</u> Petitioner's Br. at 12-14.)  That is (as demonstrated

below) an untenable assertion.  It is also a patently frivolous argument in this Circuit—neither

the FAA nor the Second Circuit recognizes "serious error" as a ground for vacating an award.

On the contrary, courts in this Circuit have repeatedly held that purported errors by arbitrators

are insufficient grounds for disturbing an award.  As this Court stated:  "the determination of the

arbitrator is final and binding on the parties, even though the arbitrator may have committed a

serious error of law or fact in reaching a decision".  <u>InterChem Asia</u>, 373 F. Supp. 2d at 347

(internal quotation marks omitted); <u>see also</u> <u>Wallace</u>, 378 F.3d at 190 ("A federal court cannot

vacate an arbitral award merely because it is convinced that the arbitration panel made the wrong call on the law" and instead an award "'should be enforced, despite a court's disagreement with it on the merits, if there is a barely colorable justification for the outcome reached'" (quoting Banco de Seguros del Estado v. Mut. Marine Office, Inc., 344 F.3d 255, 260 (2d Cir. 2003))); St. Mary Home, Inc. v. Serv. Employees Int'l Union, Dist. 1199, 116 F.3d 41, 44-45 (2d Cir. 1997) ("Internal inconsistencies in the [arbitrator's] opinion are not grounds to vacate the award notwithstanding the [movant's] plausible argument that the arbitrator's decision was misguided or our own concerns regarding the arbitrator's conclusion."); Folkways Music Publishers, Inc. v. Weiss, 989 F.2d 108, 111 (2d Cir. 1993) ("In order to advance the goals of arbitration, courts may vacate awards only for an overt disregard of the law and not merely for an erroneous interpretation."); Merrill Lynch, Pierce, Fenner & Smith Inc. v. Savino, No. 06 Civ. 868 (LAP), 2007 WL 895767, at *6 (S.D.N.Y. Mar. 23, 2007); Tucker, 451 F. Supp. 2d at 596-97.

Moreover, Fairchild's claimed "errors" are not even errors at all. Fairchild is once again blatantly misrepresenting the record and Judge Stapleton's ruling in what is essentially an impermissible attempt to appeal his findings of fact. First, Fairchild contends that Judge Stapleton "ignore[d] entirely" two contract schedules that Fairchild introduced as evidence of its purported understanding of the term "workplace health and safety". (Petitioner's Br. at 13.) That is untrue. Indeed, the Award specifically references the two schedules Fairchild cites—and then goes on to reject their evidentiary value:

> "Fairchild argues that the party's understanding and intent is clear from reading Schedules 3.24(a) and 3.16 to the Agreement. Schedule 3.16 refers to general 'litigation matters' and specifically includes 'OSHA investigation/cases', while Schedule 3.24(b) relates only to environmental claims and had no reference to non-environmental workplace health or safety claims such as machine guarding. On the other hand, the schedules were disclosure matters submitted solely by Fairchild. Alcoa was under no obligation to point out the failure to disclose workplace health or safety matters on Schedule 3.24(b)."

(Award at 4, Roy Aff. Ex. 5.)[7]  Far from ignoring Fairchild's evidence, it is clear that Judge

Stapleton simply did not credit it.  (See id. at 3-5, Roy Aff. Ex. 5; see also Alcoa's Mem. in

Reply to Fairchild Corp.'s Post-Hearing Mem. at 4-6, Slifkin Decl. Ex. O.).[8]

        Second, Fairchild contends that the decision is inconsistent.  Fairchild argues that

Judge Stapleton disallowed recovery for projects performed pursuant to Alcoa's internal standards,

yet allowed recovery for other projects Fairchild claims were similarly compelled by Alcoa's

standards.  (Petitioner's Br. at 13-14.)  Fairchild fails to mention that Alcoa presented extensive

evidence—including concessions from Fairchild's own witnesses—that its standards are often

identical to what is required by law.  (Alcoa's Proposed Findings of Fact and Conclusions of Law

at 48-50, Slifkin Decl. Ex. N.)  Moreover, what Fairchild calls inconsistency is actually evidence

of Judge Stapleton's thorough analysis of the evidence and balanced approach to the dispute:  the

Judge analyzed each claim, accepting Alcoa's evidence for some claims and rejecting it for others.

(Award at 6-13, 21, Roy Aff. Ex. 5.)[9]

        Third, Fairchild incorrectly asserts that the Award "disregards that Alcoa admitted

that it materially breached" Fairchild's contractual notice rights.  (Petitioner's Br. at 14.)  There

---

[7] The Arbitrator also specifically discussed the schedules in his decision granting in part and denying in part Alcoa's motion for partial summary judgment.  (See Interim Decision, dated December 28, 2006, at 3, Roy Aff. Ex. 18.)

[8] Fairchild similarly claims that the award ignores Alcoa documents that demonstrate that discounts for its anticipated remediation expenditures were built into the valuation of the overall transaction.  (Petitioner's Br. at 13, n.7.)  Again, this issue was extensively aired.  (See, e.g., Fairchild's Post-Hearing Br. at 15, Roy Aff. Ex. 23.)  Fairchild's disagreement with the outcome does not establish wrongdoing by Judge Stapleton.

[9] Fairchild also complains that Judge Stapleton unfairly drew a negative inference from its failure to offer the testimony of its CEO, Jeffrey Steiner.  (Petitioner's Br. at 12 n.6.)  Fairchild is blatantly mischaracterizing Judge Stapleton's decision.  The negative inference arose not merely because Fairchild failed to produce Mr. Steiner for examination, but because an Alcoa witness testified that Mr. Steiner agreed during negotiations that workplace health and safety liabilities were covered by the indemnity.  (Award at 5, Roy Aff. Ex. 5.)  Fairchild's failure to produce Mr. Steiner to rebut that damaging evidence was a wholly appropriate basis for the inference.

was no such admission.  Alcoa merely explained, and Judge Stapleton specifically accepted in his Findings of Fact and Conclusions of Law, that:

> "In addition to the claims for which Alcoa provided Fairchild with specific advance notice in writing, the remaining approximately 10% of the expenditures for which Alcoa now seeks indemnification consist largely of projects that Fairchild either itself initiated or was ordered by regulators to perform, or that were identical in nature to projects at other facilities for which Fairchild was given specific notice in writing."

(Award, App. A ¶ 123, Roy Aff. Ex. 5.)  Judge Stapleton further concluded that Alcoa did not commit a material breach of the Agreement as "[i]t seems clear from the evidence that Fairchild was going to deny liability and dispute all claims in arbitration no matter how many volumes of documents it received", and "[t]o the extent that there are technical violations of Fairchild's right to notice and participation . . . Fairchild suffered no harm or damage as a result".  (See Award at 16-17, Roy Aff. Ex. 5.)  Fairchild's current claim that Judge Stapleton "disregarded" this issue is thus clearly contradicted by the plain language of his decision.

It is plain that Fairchild has failed to demonstrate that Judge Stapleton committed any errors during the arbitration, let alone errors that would justify disturbing the award.

**C.    Fairchild Has Not Established that the Arbitration Was Fundamentally Unfair.**

While Fairchild mentions in passing that the proceeding was "fundamentally unfair" (Petitioner's Br. at 4), Fairchild offers no evidence to support that assertion.  A showing of fundamental unfairness is a prerequisite to overturning the Award.  AT&T Corp., 255 F. Supp. 2d at 303; Areca, 960 F. Supp. at 54-55.  "A fundamentally fair hearing requires that the parties be permitted to present evidence and cross-examine adverse witnesses."  Mallory Factor, 1999 WL 1021076, at *3.

As explained above, Fairchild's claim that Alcoa offered no evidence of its actual damages is wrong; its contention that the award contains errors is conclusory and contradicted by

the arbitration record and Judge Stapleton's decision. Fairchild's insinuation that Alcoa did not incur the expenses it claims (Petitioner's Br. at 4) is baseless.

The proceedings here were manifestly fair to both parties. After extensive discovery, Alcoa and Fairchild were afforded ample opportunity to present evidence. No restrictions were placed on their ability to refute the other side's evidence. The parties submitted voluminous pre- and post-trial briefing. The arbitration was conducted by a former judge who demonstrated a thorough understanding of the law and a balanced approach to the dispute. The fact that Fairchild disagrees with the outcome does not make the proceedings unfair. Nor does it justify Fairchild's decision to accuse the arbitrator of misconduct and Alcoa of committing a fraud by litigating false claims. Fairchild's attempt to manufacture a controversy sufficient to persuade this Court to reopen the arbitral record is baseless, and its petition should be denied.

## II. THIS COURT SHOULD CONFIRM THE AWARD AND ENTER JUDGMENT AGAINST FAIRCHILD FOR $12,455,585.88—$8,450,000 TO BE SATISFIED BY THE RESERVE AND $4,005,585.88 TO BE PAID FROM THE ESCROW ACCOUNT.

A petition for confirmation of an arbitral award pursuant to Section 9 of the FAA is proper where "the parties explicitly provided that 'judgment may be entered' on a final award by the arbitration tribunal". Ono Pharm. Co. v. Cortech, Inc., No. 03 Civ. 5840 SAS, 2003 WL 22481379, at *3 (S.D.N.Y. Nov. 3, 2003). The Agreement states: "The arbitration will be governed by the Federal Arbitration Act", and that "[t]he award of the arbitrator shall be final and binding on the parties and judgment upon the award may be entered and enforced in any court having jurisdiction." (Agreement § 11.7, Roy Aff. Ex. 1.) Accordingly, Alcoa's cross-petition to confirm the award is proper under the FAA and the parties' own agreement.[10]

_____

[10] There is no dispute that this Court has jurisdiction over the parties and subject matter of this litigation. (See Cross-Petition of Alcoa Inc. to Confirm Arbitration Award ¶¶ 1-3; Fairchild

"Section 9 of the FAA states that, upon petition to confirm within a year of an arbitration award, the Court 'must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11' of the FAA".  Getko Group, Inc. v. Amica Mut. Ins. Co., No. 03 Civ. 5876 (VM), 2003 WL 22455303, at *4 (S.D.N.Y. Oct. 28, 2003) (Marrero, J.) (quoting statute).  "Where, as here, there is no reason to believe that the arbitration process was improper, a court must grant an order to confirm an arbitration award upon the timely application of a party."  Herrenknecht Corp. v. Best Road Boring, No. 06 Civ. 5106 (JFK), 2007 WL 1149122, at *2 (S.D.N.Y. Apr. 16, 2007).  Confirmation "is a summary proceeding that merely makes what is already a final arbitration award a judgment of the Court".  Florasynth, Inc. v. Pickholz, 750 F.2d 171, 176 (2d Cir. 1984).

As explained in Part I, supra, Fairchild has not demonstrated, nor even truly alleged, either "outright perfidy" or "manifest disregard of the law" on the part of Judge Stapleton.  Accordingly, the Award must be confirmed.  See, e.g., Wallace, 378 F.3d at 189, 193; InterChem Asia, 373 F. Supp. at 347, 349.

By letters to Alcoa and the escrow agent after Judge Stapleton issued the Award, Fairchild argued that no disbursement should be made until the award is reduced by any tax savings as described in § 11.3(e) of the Agreement.  (See Ltrs. from A. Zurofsky to J. Osborn, dated June 28, 2007 and June 29, 2007, Slifkin Decl. Exs. R, U; Ltr. from A. Zurofsky to E. Chesler, dated June 26, 2007, Slifkin Decl. Ex. Q.)  Fairchild also invoked the Agreement's dispute resolution provision, demanding that Alcoa meet and confer on an allegedly "new" dispute over the damages unconditionally awarded on claims that had just been fully and

---

Pet. ¶¶ 1-3.)  Further, venue is proper in the Southern District of New York because it is the district in which the award was made.  See 9 U.S.C. § 9; see also Motion Picture Lab. Technicians Local 780 v. McGregor & Werner, Inc., 804 F.2d 16, 18 (2d Cir. 1986).

conclusively arbitrated.  (Ltr. from A. Zurofsky to D. Slifkin, dated June 29, 2007, at 2, Slifkin

Decl. Ex. V; cf. Ltr. from D. Slifkin to A. Zurofsky, dated June 28, 2007, Slifkin Decl. Ex. T.)

        Judge Stapleton's unequivocal award of a $4,005,585.88 disbursement from the

escrow account (in addition to his award exhausting an existing reserve in the amount of $8.45

million) allows for no such reduction or re-opening of the arbitration.  (Award at 22, Roy Aff.

Ex. 5.)  Fairchild's latest argument is nothing more than a belated defense to fully arbitrated

claims.  The tax savings reduction contemplated in § 11.3(e) concerns the calculation of

"Indemnifiable Losses" as defined under the Agreement.  (Agreement § 11.3(e), Roy Aff. Ex. 1.)

However, the arbitration was precisely about the validity and amount of Alcoa's claims for

indemnification for "Indemnifiable Losses".  (Id. § 11.7.)  Accordingly, the value of

"Indemnifiable Losses"—as impacted by any tax benefits—has been fully arbitrated, and any

and all offsetting tax benefit issues could and should have been arbitrated in the first instance.

Judge Stapleton heard expert testimony concerning what tax credits Fairchild was entitled to

receive against Alcoa's recovery.  (Award at 17-19, 21-22, Roy Aff. Ex. 5.)  He subsequently

reduced the award by $1,190,672.05 to reflect those tax credits.  (Id. at 22.)  In other words,

Fairchild had a full and fair opportunity to arbitrate tax offset issues; it should not be permitted to

reopen the proceedings now by raising an issue that it could have raised earlier.[11]  See, e.g., The

Evangelical Alliance Mission/Nihon Domei Kirisuto Kyodan v. Lockman Found., No. 95 Civ.

---

[11] Fairchild claims that it could not raise this §11.3(e) tax savings issue until after the Award was issued.  (See Ltr. from A. Zurofsky to D. Slifkin, dated June 29, 2007 at 1, Slifkin Decl. Ex. V.)  To the contrary, Fairchild had ample opportunity to raise any and all issues impacting the calculation of damages and never suggested that further proceedings would be necessary pursuant to § 11.3(e)—nor even cited § 11.3(e)—until after the Award was issued in an amount that Fairchild does not like.  Tellingly, the tax credit issue that Fairchild did raise in the arbitration was contingent upon future events, but Fairchild nevertheless raised the issue and the Arbitrator awarded conditional tax credits accordingly.  (Award at 17-19, 21-22, Roy Aff. Ex. 5.)

7214 (SHS), 1995 WL 688958 (S.D.N.Y. Nov. 21, 1995) (enjoining re-arbitration on res judicata grounds where "new" claims were based on the same contract).

When a court determines that an award for a sum certain should be confirmed, the court need not make further inquiry into damages—judgment in amount of the sum certain is warranted. Herrenknecht Corp., 2007 WL 1149122, at *1. Here, the Award unconditionally orders the disbursement of a $4,005,585.88 sum certain from the escrow account to Alcoa. (Award at 22, Roy Aff. Ex. 5.) Alcoa is entitled to a judgment consistent with the Award.

## III.    THE COURT SHOULD AWARD ALCOA ATTORNEY'S FEES AND PREJUDGMENT INTEREST.

Judicial enforcement of this straightforward arbitration award should not have been necessary. See, e.g., Hunt v. Commodity Haulage Corp., 647 F. Supp. 797, 799 (E.D.N.Y. 1986) ("It would be difficult in this case to conclude that attorneys' fees and costs . . . should not be awarded petitioner. . . .  Respondents had agreed . . . to submit these disputes to arbitration and to be bound by the arbitrators' determination.").  There is nothing ambiguous about Judge Stapleton's declaration that "Alcoa is entitled to receive the amount of $4,005,585.88 from the Escrow Account payable in full within thirty days of the date of this Award" (see Award at 22, Roy Aff. Ex. 5), or his conclusion that "[a]ll claims and counterclaims not expressly awarded or referred to herein are hereby denied.  This Award is in full settlement of all claims and counterclaims submitted in this arbitration" (see id.).  Fairchild has not raised, because it cannot raise, any good-faith argument that the award is invalid.  Fairchild simply does not want to pay, and so it has forced Alcoa to incur the needless cost of defending against a meritless petition to vacate and of filing a cross-petition to enforce a final and binding arbitration award.

"[A]ttorney's fees and costs may be proper when a party opposing confirmation of an arbitration award refuses to abide by an arbitrator's decision without justification."

23

Herrenknecht Corp., 2007 WL 1149122, at *3 (citation omitted). Accordingly, an award of attorney's fees is entirely proper where a party's arguments for vacatur are meritless. E.g., Saudi Iron & Steel Co. v. Stemcor USA Inc., No. 97 CIV. 5976 (DLC), 1997 U.S. Dist. LEXIS 20336, at *5-6 (S.D.N.Y. Dec. 22, 1997) (awarding attorney's fees and ordering Rule 11 sanctions where respondent's objections to arbitral award confirmation were meritless); U.S. Offshore, Inc. v. Seabulk Offshore, Ltd., 753 F. Supp. 86, 92-93 (S.D.N.Y. 1990) (awarding attorney's fees and ordering Rule 11 sanctions where petitioner's arguments for vacatur were meritless and "appear[ed] to have been motivated by a desire to forestall complying with the award"). Despite a final, binding and entirely proper arbitration award, Fairchild continues to make calculated decisions to evade its indemnification obligations at ever-increasing cost to Alcoa. As a matter of equity, Alcoa should be awarded its costs and attorney's fees in connection with enforcing the Award.

Alcoa should also be awarded prejudgment interest. The Second Circuit has established a presumption in favor of awarding prejudgment interest when confirming arbitration awards. E.g., Serv. Employees Int'l Union, Local 32BJ, AFL-CIO v. Stone Park Assocs., LLC, 326 F. Supp. 2d 550, 555 (S.D.N.Y. 2004). Courts in this Circuit have granted prejudgment interest where, as here, "the agreement between the parties states that an arbitration decision is final and binding." Herrenknecht Corp., 2007 WL 1149122, at *3. (See also Agreement § 11.7, Roy Aff. Ex. 1.) In diversity actions, interest is to be calculated according to the statutory rate prescribed by the law governing the contract. See, e.g., Westchester Fire Ins. Co. v. Massamont Ins. Agency, Inc., 420 F. Supp. 2d 223, 226-27 (S.D.N.Y. 2005). The Acquisition Agreement is governed by Delaware law (Agreement § 10.8, Roy Aff. Ex. 1), which provides a statutory rate for prejudgment interest of 5% over the Federal Reserve discount rate including any surcharge as

of the time from which interest is due.  6 Del. C. § 2301 (2007); <u>see also</u> <u>Commonwealth Constr.</u>
<u>Co. v. Cornerstone Fellowship Baptist Church, Inc.</u>, C.A. No. 04L-10-101 RRC, 2006 Del.
Super. LEXIS 411, at *3 n.4 (Oct. 3, 2006) .  Accordingly, this Court should grant prejudgment
interest at the Delaware statutory rate from the date the disbursement is due, July 21, 2007.  (<u>See</u>
Agreement § 11.7, Roy Aff. Ex. 1; Award at 22, Roy Aff. Ex. 5.)

## CONCLUSION

For the foregoing reasons, the Court should deny Fairchild's Petition to Vacate
Arbitration Award and grant Alcoa's Cross-Petition to Confirm the Arbitration Award.  The
Court should also enter judgment for Alcoa in the amount of $12,455,585.88—$8,450,000 to be
satisfied by the reserve and $4,005,585.88 to be paid from the escrow account—and award Alcoa
costs, attorney's fees incurred to oppose Fairchild's meritless petition and enforce the award,
along with prejudgment interest for the period beginning July 21, 2007, payable by Fairchild.

July 17, 2007

Respectfully submitted,

CRAVATH, SWAINE & MOORE LLP,

by
_____
s/Evan R. Chesler
Evan R. Chesler
Daniel Slifkin
Members of the Firm

Attorneys for Respondent and Cross-
Petitioner Alcoa Inc.
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475
(212) 474-1000

25