## ESCROW AGREEMENT

ESCROW AGREEMENT, dated as of December 3, 2002 (the "Escrow Agreement"), among The Fairchild Corporation, a Delaware corporation (the "Parent"), Alcoa Inc., a Pennsylvania corporation (the "Buyer"), and J.P. Morgan Trust Company, National Association, as escrow agent (the "Escrow Agent").

WHEREAS, pursuant to the Acquisition Agreement, dated as of July 16, 2002, as amended (the "Acquisition Agreement"), among the Buyer, the Parent, Fairchild Holding Corp., a Delaware corporation and an indirect, wholly owned subsidiary of the Parent, and Sheepdog, Inc., a Delaware corporation and an indirect, wholly owned subsidiary of the Parent, the Buyer wishes to acquire from the Sellers (i) the Fastener Business Assets (other than the Fastener Business Assets owned or held by the Transferred Fastener Subsidiaries) and (ii) the outstanding capital stock and membership interests, as the case may be, of the Transferred Fastener Subsidiaries;

WHEREAS, Section 2.4 of the Acquisition Agreement provides for the Buyer to deposit $25,000,000 of the Consideration (the "Initial Escrow Amount") with the Escrow Agent to hold, invest, reinvest and disburse in accordance with the terms hereof;

WHEREAS, Articles VI, VIII and Article XI of the Acquisition Agreement provide for the indemnification of the Buyer and certain other persons from various specified Indemnifiable Losses;

WHEREAS, the Letter Agreement with respect to certain Fastener Business payables and receivables, dated December 3, 2002 (the "Side Letter"), between the Buyer and the Parent provides for the indemnification of the Buyer and certain other persons from various specified Indemnifiable Losses;

WHEREAS, Section 2.8 of the Acquisition Agreement provides for an Earn-Out payment based on the number of Commercial Aircraft actually delivered by Boeing and Airbus in each calendar year during the Earn-Out Period in excess of the applicable Threshold Level set forth in Section 2.8(b) of the Acquisition Agreement; and

WHEREAS, capitalized terms used and not defined herein shall have the respective meanings assigned to them in the Acquisition Agreement.

NOW, THEREFORE, in consideration of the foregoing premises and of the respective covenants and agreements of the parties herein contained, and intending to be legally bound hereby, the parties hereto agree as follows:

ALCOA ARBITRATION EXHIBIT 247

1. Appointment of Escrow Agent

The Buyer and the Parent hereby appoint the Escrow Agent, and the Escrow Agent hereby accepts its appointment as escrow agent, to hold, invest, reinvest and disburse the Escrow Funds (as defined below) in accordance with the terms hereof.

2. Delivery of Funds

Concurrently with the execution and delivery of the Escrow Agreement, the Buyer is delivering to the Escrow Agent the Initial Escrow Amount, to be held by the Escrow Agent in accordance with the terms of this Escrow Agreement. The Escrow Agent hereby acknowledges receipt of the Initial Escrow Amount.

3. Investment of Funds

(a) During the term of this Escrow Agreement, all funds held by the Escrow Agent under this Escrow Agreement along with any interest or income earned thereon (collectively, the "Escrow Funds") shall be continuously invested and reinvested by the Escrow Agent in Permitted Investments (as defined below) as the Parent shall from time to time direct in writing, in the sole discretion of the Parent. All investment instructions hereunder shall be provided to the Escrow Agent no later than one business day prior to the date on which the investments directed therein are to be made. During the term of this Escrow Agreement, the Escrow Funds shall be continuously invested and reinvested by the Escrow Agent in any of the following qualified investments (each a "Permitted Investment"): (i) any bonds or obligations which as to principal and interest constitute direct obligations of or are guaranteed by the United States of America; (ii) certificates of deposit of banks or trust companies, including the Escrow Agent, organized under the laws of the United States of America or any state thereof, with capital and surplus of at least $100,000,000; (iii) commercial paper or finance company paper, including that of any affiliate of the Escrow Agent, which is rated not less than prime-one or A-1 or their equivalents by Moody's Investor Service, Inc. or Standard and Poor's Corporation or their respective successors; (iv) shares of any so called "money market fund" or mutual fund which has its assets invested primarily in investments of the type described in clauses (i), (ii) and (iii) above, including, without limitation, the JPMorgan Money Market Funds or any other mutual fund for which the Escrow Agent or an affiliate of the Escrow Agent serves as investment manager, administrator, shareholder servicing agent and/or custodian; or (v) any other investment as the Buyer, the Parent and the Escrow Agent may mutually agree upon.

(b) The Escrow Agent is hereby authorized to execute purchases and sales of Permitted Investments through the facilities of its own trading or capital markets operations or those of any affiliated entity, including investment orders involving U.S. Treasury obligations, commercial paper and other direct investments executed through JPMorgan Fleming Asset Management ("JPMFAM"), of the investment management division of JPMorgan Chase. Subject to principles of best execution, transactions will be effected on behalf of the escrow account through broker dealers selected by JPMFAM.

In this regard, JPMFAM shall seek to attain the best overall result for the Escrow Funds, taking into consideration quality of service and reliability. The Escrow Agent shall send an Escrow Statement to each of the Buyer and the Parent on a monthly basis reflecting activity in the escrow account for the preceding month. Each "Escrow Statement" shall set forth with respect to the period covered thereby (A) the balance of the Escrow Funds (the "Escrow Balance") as of the beginning of such period, (B) the Escrow Balance as of the end of such period, (C) the amount of each release of Escrow Funds to the Buyer under Sections 4(b) and 4(c) (and the identity of the Buyer Certificate (as defined below) or the Tax Indemnification Notice (as defined below) with respect to which each such release related, as applicable) and to the Parent under Section 4(d) or 4(e) during such period, (D) the aggregate amount of interest and income earned on the Permitted Investments of the Escrow Funds during such period, (E) the aggregate of all Demand Amounts (as defined below) and Demand Tax Amounts (as defined below) previously submitted to the Escrow Agent with respect to which the Escrow Agent had neither released Escrow Funds to the Buyer in accordance with Section 4(b)(ii) or 4(c)(ii) nor received a Determination (as defined below) or Tax Determination (as defined below) under Section 4(b)(iii) or 4(c)(iii) ("Pending Demand Amounts") as of the end of such period and (F) the aggregate amount of all Plan Deficiency Amounts (as defined below) with respect to which the Buyer has previously delivered a Plan Deficiency Certificate (as defined below) and has not subsequently delivered a Plan Compliance Certificate (the "Outstanding Plan Deficiency Amounts"). Although the Buyer and the Parent each recognize that it may obtain a broker confirmation or written statement containing comparable information at no additional cost, within three business days following any securities transaction in the escrow account, and which reflects the amount of the agency fee, the Buyer and the Parent hereby agree that confirmations of Permitted Investments are not required to be issued by the Escrow Agent for each month in which a monthly statement is rendered. The Buyer and the Parent acknowledge and agree that the disbursement and release of Escrow Funds on any particular date is subject to the sale and final settlement of Permitted Investments. Proceeds of a sale of Permitted Investments will be delivered on the business day on which the appropriate instructions are delivered to the Escrow Agent if received prior to the applicable deadline for same day sale of such Permitted Investments. If such instructions are received after the applicable deadline, proceeds will be delivered on the next succeeding business day.

(c) The Escrow Agent in its capacity as escrow agent hereunder shall not have any liability for any loss sustained as a result of any investment of the Escrow Funds made pursuant to the instructions of the parties hereto in accordance with this Escrow Agreement or as a result of any liquidation of any investment prior to its maturity or for the failure of the parties to give the Escrow Agent instructions to invest or reinvest the Escrow Funds or any earnings thereon.

(d) The Buyer and the Parent recognize and agree that the Escrow Agent will not provide supervision, recommendations or advice relating to either the investment of the Escrow Funds or the purchase, sale, retention or other disposition of any Permitted Investment.

3

4. Disbursement of Escrow Funds

(a) *General.* Unless the Buyer earlier instructs the Escrow Agent in writing to terminate the escrow and release the Escrow Funds to the Parent, the Escrow Agent will hold the Escrow Funds in its possession, except as provided in this Section 4.

(b) *Release of Escrow Funds for Indemnification Payments under the Acquisition Agreement.*

(i) The Buyer shall deliver to the Escrow Agent a copy of each notice from the Buyer to the Parent (a "Buyer's Indemnification Notice") delivered pursuant to the Acquisition Agreement seeking indemnification under the Acquisition Agreement together with a certificate (together, a "Buyer Certificate"). To the extent not included in a Buyer's Indemnification Notice, the related Buyer's Certificate shall (i) specify in reasonable detail the nature of the Indemnifiable Loss under the Acquisition Agreement (including the section or sections of the Acquisition Agreement upon which the Buyer is seeking indemnification), (ii) specify the amount, and itemize in reasonable detail each component, of the Indemnifiable Loss, if then reasonably ascertainable by the Buyer (the "Demand Amount"), or that the amount of the Indemnifiable Loss is not reasonably ascertainable at that time, (iii) specify whether such Indemnifiable Loss is a Third Party Claim, (iv) demand that the Escrow Agent release an amount from the Escrow Funds equal to the Demand Amount, if specified, by wire transfer of immediately available funds to the bank account specified in the Buyer Certificate, and (v) certify that the Buyer has delivered a copy of the Buyer Certificate to the Parent.

(ii) Unless the Escrow Agent receives from the Parent a written notice of objection to a Buyer Certificate (a copy of which shall be sent contemporaneously to the Buyer by the Parent) within thirty calendar days after receipt of the related Buyer's Indemnification Notice, the Escrow Agent shall release to the Buyer, in satisfaction of the Demand Amount set forth in such Buyer Certificate, Escrow Funds equal to the Demand Amount in accordance with the instructions set forth in the Buyer Certificate. In any written notice of objection to a Buyer Certificate, the Parent may state an objection to all or a portion of the Demand Amount sought in such Buyer Certificate. If the Parent objects to only a portion of such Demand Amount, such notice of objection shall instruct the Escrow Agent to release, and the Escrow Agent shall release, to the Buyer in accordance with this Section 4(b)(ii) Escrow Funds equal to that portion of the Demand Amount that is not contested by the Parent.

(iii) In the event that the Parent delivers to each of the Escrow Agent and the Buyer a written notice of objection to any Buyer Certificate within the time period specified in Section 4(b)(ii), the Escrow

4

Agent shall not release the amount of Escrow Funds relating to the contested portion of the Demand Amount until the Escrow Agent receives a Determination. For purposes of this Agreement, a "Determination" shall mean: (x) a written settlement or other joint instruction from the Buyer and the Parent, or (y) a binding arbitration award or a judgment of a court of competent jurisdiction in the United States of America (the time for appeal having expired and no appeal having been perfected), or in the case of Indemnifiable Losses relating to Taxes, a final determination of the appropriate Taxing authority with respect to the Tax amount in dispute. In all cases, the Determination shall indicate the amount of Escrow Funds from the escrow account to be released to the Buyer, or that no Escrow Funds are to be released to the Buyer. In the event Escrow Funds are to be released to the Buyer, the Determination shall be delivered to the Escrow Agent together with wire transfer instructions from the Buyer so that the Escrow Agent may wire transfer immediately available funds in the amount specified in the Determination to the bank account specified in the wire transfer instructions by the Buyer.

(iv) If the Escrow Funds are insufficient to pay all Demand Amounts, the Parent agrees, subject to the terms and conditions set forth in the Acquisition Agreement, (i) to honor the indemnity of the Buyer with respect to the Demand Amount and (ii) to pay the amount of such insufficiency.

(c) *Release of Escrow Funds For Tax Indemnification Payments under the Side Letter.*

(i) The Buyer shall deliver to the Escrow Agent a copy of each notice from the Buyer to the Parent (a "Tax Indemnification Notice") seeking indemnification pursuant to the Side Letter. The Tax Indemnification Notice shall (i) specify in reasonable detail the nature of the Indemnifiable Loss under the Side Letter, (ii) specify the amount, and itemize in reasonable detail each component, of the Indemnifiable Loss, if then reasonably ascertainable by the Buyer (the "Demand Tax Amount"), or that the amount of the Indemnifiable Loss is not reasonably ascertainable at that time, (iii) specify whether such Indemnifiable Loss is a claim, demand, action, suit or proceeding made or brought by any Government entity or taxing authority, (iv) demand that the Escrow Agent release an amount from the Escrow Funds equal to the Demand Tax Amount, if specified, by wire transfer of immediately available funds to the bank account specified in the Tax Indemnification Notice, and (v) certify that the Buyer has delivered a copy of the Tax Indemnification Notice to the Parent.

(ii) Unless the Escrow Agent receives from the Parent a written notice of objection to a Tax Indemnification Notice (a

5

copy of which shall be sent contemporaneously to the Buyer by the Parent) within thirty calendar days after receipt of the related Tax Indemnification Notice, the Escrow Agent shall release to the Buyer, in satisfaction of the Demand Tax Amount set forth in such Tax Indemnification Notice, Escrow Funds equal to the Demand Tax Amount in accordance with the instructions set forth in the Tax Indemnification Notice. If the Parent objects to only a portion of such Demand Tax Amount, such notice of objection shall instruct the Escrow Agent to release, and the Escrow Agent shall release, to the Buyer in accordance with this Section 4(c)(ii) Escrow Funds equal to that portion of the Demand Tax Amount that is not contested by the Parent.

(iii) In the event that the Parent delivers to each of the Escrow Agent and the Buyer a written notice of objection to any Tax Indemnification Notice within the time period specified in Section 4(c)(ii), the Escrow Agent shall not release the amount of Escrow Funds relating to the contested portion of the Demand Tax Amount until the Escrow Agent receives a Tax Determination. For purposes of this Agreement, a "Tax Determination" shall mean: (x) a written settlement or other joint instruction from the Buyer and the Parent, or (y) a copy of an Advisor conclusion under Section 8.8(b) of the Acquisition Agreement with respect to such contested portion. In all cases, the Tax Determination shall indicate the amount of Escrow Funds from the escrow account to be released to the Buyer, or that no Escrow Funds are to be released to the Buyer. In the event Escrow Funds are to be released to the Buyer, the Tax Determination shall be delivered to the Escrow Agent together with wire transfer instructions from the Buyer so that the Escrow Agent may wire transfer immediately available funds in the amount specified in the Tax Determination to the bank account specified in the wire transfer instructions by the Buyer.

(d) *Release of Escrow Funds for Earnings on Permitted Investments.*

Within five business days of the end of each calendar quarter prior to the termination of this Escrow Agreement, (i) the Escrow Agent shall deliver to each of the Buyer and the Parent an Escrow Statement with respect to such period and (ii) the Escrow Agent shall deliver to the Parent the aggregate amount of interest and income earned on the Permitted Investments of the Escrow Funds during such period, as set forth on such Escrow Statement.

(e) *Release of Escrow Funds on Escrow Termination Date.*

As soon as practicable following the fifth anniversary of the Closing Date (the "Escrow Termination Date"), the Escrow Agent shall deliver to each of the Buyer and the Parent an Escrow Statement with respect to the period beginning

on the date of the last Escrow Statement and ending on the Escrow Termination Date. In the event that on the Escrow Termination Date there is a pending Plan Deficiency Certificate for which no Plan Compliance Certificate has been subsequently delivered to the Escrow Agent by the Buyer, the Escrow Agent shall promptly release to the Buyer the lesser of (i) an amount equal to the aggregate of all Outstanding Plan Deficiency Amounts, as set forth on such Escrow Statement, or (ii) all remaining Escrow Funds, as set forth on such Escrow Statement, for the benefit of the Fastener Business Participants (as defined below), notwithstanding the existence of any Pending Demand Amounts. In the event any Escrow Funds remain after complying with the previous sentence, the Escrow Agent shall promptly release to the Parent all remaining Escrow Funds it then holds less an amount equal to the aggregate of all Pending Demand Amounts, as set forth on such Escrow Statement, which Pending Demand Amounts shall be retained by the Escrow Agent until released in accordance with Section 4(b)(i), 4(b)(ii), 4(b)(iii), 4(c)(i), 4(c)(ii) or 4(c)(iii) as applicable. When any Pending Demand Amount is satisfied or otherwise resolved for an amount less than the amount retained by the Escrow Agent in respect thereof under Section 4(b) or 4(c), the Escrow Agent shall promptly release to the Parent Escrow Funds equal to the difference between the amount retained by the Escrow Agent in respect of such Pending Demand Amount and the amount paid to the Buyer in satisfaction thereof.

(f) *Obligations Relating to a Plan Deficiency Event.*

In the event that the sponsors of the Retirement Plan for Employees of the Fairchild Corporation – The Fairchild Fasteners Group Retirement Plan (the "Plan") failed to distribute a lump-sum distribution of accrued benefits requested by a Fastener Business Employee participant in the Plan (a "Fastener Business Participant") in accordance with the terms of the Plan (a "Plan Deficiency Event"), the Buyer shall audit, inspect and review the distribution of the accrued benefits under the Plan in accordance with Section 6.3 of the Acquisition Agreement and shall deliver to the Escrow Agent a written statement certifying the occurrence of such Plan Deficiency Event (a "Plan Deficiency Certificate"). The Plan Deficiency Certificate shall include: (i) the amount of any accrued benefits under the Plan that were not distributed in a lump-sum to each Fastener Business Participant in accordance with the terms of the election of the Fastener Business Participant (the "Plan Deficiency Amount"); and (ii) a certification that the Buyer has delivered a copy of the Plan Deficiency Certificate to the Parent. In the event the Parent cures, or causes the sponsors of the Plan to cure, any Plan Deficiency Event prior to the Escrow Termination Date, the Parent shall provide the Buyer with a written notice certifying the occurrence of such cure and, upon confirmation of such cure by the Buyer, the Buyer shall promptly deliver to the Escrow Agent a written notice certifying that the Fastener Business Participant who was eligible for and has elected to receive his lump-sum benefit distribution pursuant to the Plan has received such lump-sum benefit distribution (and the

amount and form of such lump-sum distribution was not affected by any termination of the Plan) (a "Plan Compliance Certificate").

5. Escrow Account Shortfall

Within five business days following December 31, of each calendar year prior to the Escrow Termination Date, the Escrow Agent shall deliver to each of the Buyer and the Parent an Escrow Statement with respect to such calendar year. In the event that the Escrow Balance as of December 31 of such calendar year, as set forth on such Escrow Statement, is less than $25,000,000 (such shortfall being referred to as an "Escrow Shortfall"), then the Buyer shall deliver to the Escrow Agent an amount in cash equal to the amount of the Escrow Shortfall from the Earn-Out payment, if any, payable by the Buyer to the Parent with respect to such calendar year pursuant to Section 2.8 of the Acquisition Agreement. In the event the Earn-Out payment in such calendar year is less than the Escrow Shortfall, the Buyer shall deliver the entire Earn-Out payment, if any, to the Escrow Agent to be included in the Escrow Funds. In the event the Earn-Out payment in such calendar year is greater than the Escrow Shortfall, the Buyer shall deliver to the Escrow Agent a portion of the Earn-Out payment equal to the amount of the Escrow Shortfall to be included in the Escrow Funds and the remaining portion of the Earn-Out payment shall be paid to the Parent in accordance with the terms of Section 2.8 of the Acquisition Agreement. In no event shall the Buyer be required to fund any Escrow Shortfall with respect to any calendar year except from the Earn-Out payment, if any, payable by the Buyer to the Parent with respect to such calendar year pursuant to Section 2.8 of the Acquisition Agreement.

6. Rights of the Escrow Agent

(a) The Escrow Agent shall have no duties or responsibilities except those expressly set forth herein and no other or further duties or responsibilities shall be implied. The Escrow Agent shall have no liability under and no duty to inquire as to the provisions of any agreement other than this Escrow Agreement.

(b) The Escrow Agent may rely and shall be protected in acting or refraining from acting upon any written notice, instruction or request furnished to it hereunder and believed by it to be genuine and to have been signed or presented by the proper party or parties. The Escrow Agent shall be under no duty to inquire into or investigate the validity, accuracy or content of any such document. The Escrow Agent shall have no duty to solicit any payments which may be due it hereunder.

(c) No person, firm or corporation will be recognized by the Escrow Agent as a successor or assignee of the Buyer or the Parent until there shall be presented to the Escrow Agent evidence satisfactory to it of such succession or assignment. Any corporation into which the Escrow Agent in its individual capacity may be merged or converted or with which it may be consolidated, or any corporation resulting from any merger, conversion or consolidation to which the Escrow Agent in its individual capacity

shall be a party, or any corporation to which substantially all the corporate trust business of the Escrow Agent in its individual capacity may be transferred, shall be the Escrow Agent under this Escrow Agreement without further act.

(d) The Buyer and the Parent shall each execute and deliver to the Escrow Agent a certificate of incumbency substantially in the form of Exhibit A hereto for the purpose of establishing the identity of the persons authorized to give instructions, certificates and notices hereunder and otherwise to act on behalf of such party, which certificates shall contain specimens of such persons' signatures. The Escrow Agent may rely upon and shall not be liable for acting or refraining from acting upon any written notice, instruction or request furnished to it hereunder and believed by it to be genuine and to have been signed or presented by the proper party or parties. The Escrow Agent shall be under no duty to inquire into or investigate the validity, accuracy or content of any such document. In the event of any change in the identity of such representatives, a new certificate of incumbency shall be executed and delivered to the Escrow Agent by the appropriate party. Until such time as the Escrow Agent shall receive a new incumbency certificate, the Escrow Agent shall be fully protected in relying without inquiry on any then current incumbency certificate on file with the Escrow Agent.

(e) The Escrow Agent shall not be liable for any act it may do or omit to do except to the extent that a court of competent jurisdiction determines that the Escrow Agent's negligence, bad faith or gross or willful misconduct was the primary cause of any loss to the Buyer or the Parent. The Escrow Agent may execute any of its powers and perform any of its duties hereunder directly or through agents or attorneys and may consult with counsel, accountants and other skilled persons to be selected and retained by it. The Escrow Agent shall not be liable for anything done, suffered or omitted in its reasonable good faith judgment in accordance with the advice or opinion of any such counsel, accountants or other skilled persons.

(f) In the event that the Escrow Agent shall be uncertain as to its duties or rights hereunder or shall receive instructions, claims or demands from any party hereto which, in its opinion, conflict with any of the provisions of this Escrow Agreement, it shall be entitled to refrain from taking any action and its sole obligation shall be to keep safely all property held in escrow until it shall be directed otherwise in writing by each of the other parties hereto or by a final order or judgment of a court of competent jurisdiction and shall be permitted to interplead all of the assets held hereunder into a court of competent jurisdiction, and thereafter be fully relieved from any and all liability or obligation with respect to such interpleaded assets. The parties hereto other than the Escrow Agent further agree to pursue any redress or recourse in connection with such a dispute without making the Escrow Agent a party to it.

(g) The compensation of the Escrow Agent shall be as set forth in Schedule I. The Buyer and the Parent shall each be responsible for one-half of said compensation. The Buyer and the Parent shall jointly pay or reimburse the Escrow Agent upon request for all expenses, disbursements and advances, including reasonable attorney's fees and expenses, incurred or made by it in connection with the preparation, execution,

performance, delivery, modification and termination of this Escrow Agreement (with the Buyer and the Parent each being responsible for one-half), except as a result of the Escrow Agent's own negligence, bad faith or gross or willful misconduct. The Escrow Agent shall not be entitled to set off or deduct any unpaid fees and/or non-reimbursed expenses from the Escrow Funds.

(h) The Buyer and the Parent shall jointly and severally indemnify, defend and hold harmless the Escrow Agent and its employees, directors, representatives, officers and agents from all loss, liability or expense (including the fees and expenses of in-house or outside counsel) arising out of or in connection with (i) the Escrow Agent's execution and performance of the Escrow Agreement, to the extent that such loss, liability or expense is not due to the negligence, bad faith or gross or willful misconduct of the Escrow Agent, or (ii) its following any instructions or other directions from the Buyer or the Parent, except to the extent that its following any such instruction or direction is expressly forbidden by the terms hereof. The parties hereto acknowledge that the foregoing indemnities shall survive the resignation or removal of the Escrow Agent or the termination of this Escrow Agreement. The Buyer and the Parent agree to reimburse each other for one-half of any payments made by them pursuant to this Section 7(h) with respect to liabilities for which the parties are jointly liable pursuant to this Section 7(h).

(i) The Escrow Agent may resign and be discharged from its duties hereunder at any time by giving written notice of such resignation to the Buyer and the Parent specifying a date (not less than thirty days after the giving of such notice) when such resignation shall take effect and upon delivery of the Escrow Funds to the successor escrow agent designated by the Buyer and the Parent; *provided, however,* that the Escrow Agent shall have the right to withhold an amount equal to any amount due and owing to the Escrow Agent, plus any costs and expenses the Escrow Agent shall reasonably believe may be incurred by the Escrow Agent in connection with the termination of the Escrow Agreement. Promptly after such notice, a successor escrow agent shall be appointed by the mutual agreement of the Buyer and the Parent, such successor escrow agent to become Escrow Agent hereunder upon the resignation date specified in such notice. If the Buyer and the Parent are unable to agree upon a successor escrow agent within thirty days after such notice, the Escrow Agent shall be entitled to appoint its successor. The Escrow Agent shall continue to serve until its successor has received the Escrow Funds and has accepted by written notice to the Buyer and the Parent the terms and conditions of this Escrow Agreement. The Buyer and the Parent may agree at any time to substitute a new escrow agent by giving notice thereof to the Escrow Agent then acting. Upon its resignation and delivery of the Escrow Funds as set forth in this Section 6(i), the Escrow Agent shall be discharged of and from any and all further obligations arising in connection with the escrow contemplated by this Escrow Agreement.

7. Taxation

(a) On or prior to the date of this Escrow Agreement, the Buyer and the Parent, for purposes of United States backup withholding tax and information reporting requirements, will provide the Escrow Agent with an executed copy of Internal Revenue

Service form W-9 (for United States persons) or form W-8 (for non-United States persons) or any successor forms (as may be required by the Escrow Agent). The Buyer and the Parent agree to provide replacement forms if originals of any form previously provided become obsolete or incomplete. Each of the Buyer and the Parent represent that the Taxpayer Identification Number ("TIN") assigned to it by the Internal Revenue Service and provided to the Escrow Agent is correct. Each of the Buyer and the Parent agrees that all interest or other income earned under the Escrow Agreement shall be allocated to the Parent and so reported to the Internal Revenue Service and any other applicable taxing authority, except to the extent that any law or regulation should otherwise require.

(b) The Escrow Agent shall report to the Internal Revenue Service, as of each calendar year-end, all income earned from the investment of any sum held in the Escrow Account for the Parent whether or not said income has been distributed during such year, as and to the extent required by law.

(c) Any tax returns required to be prepared and filed will be prepared and filed by the Parent with the Internal Revenue Service in all years income is earned by the escrow account, whether or not income is received or distributed in any particular tax year, and the Escrow Agent shall have no responsibility for the preparation and/or filing of any tax return with respect to any income earned by the Escrow Account.

(d) The Parent shall pay all taxes payable on income earned from the investment of any sums held in the Escrow Account whether or not the Escrow Agent distributed the income during any particular year.

8. Miscellaneous Provisions

(a) As of the date that the Escrow Agent has delivered either to the Parent and/or the Buyer in accordance with the provisions hereof the entire amount of the Escrow Funds, this Escrow Agreement shall terminate, except that the provisions of Section 6(e) through Section 6(i) and Section 7 shall survive such termination.

(b) In the event funds transfer instructions are given (other than at the time of execution of this Escrow Agreement), whether in writing, by email, telecopier or otherwise, the Escrow Agent is authorized to seek confirmation of such instructions by telephone call-back to the person or persons designated on Schedule II attached hereto, and the Escrow Agent may rely upon the confirmation of anyone purporting to be the person or persons so designated. The persons and telephone numbers for call-backs may be changed only in a writing actually received and acknowledged by the Escrow Agent. The Escrow Agent and the beneficiary's bank in any funds transfer may rely solely upon any account numbers or similar identifying numbers provided by the Buyer or the Parent to identify (i) the beneficiary, (ii) the beneficiary's bank, or (iii) an intermediary bank. The Escrow Agent may apply any of the Escrow Funds for any payment order it executes using any such identifying number, even where its use may result in a person other than the beneficiary being paid, or the transfer of funds to a bank other than the beneficiary's

bank or an intermediary bank designated. The parties to this Escrow Agreement acknowledge that these security procedures are commercially reasonable.

(c) The Buyer and the Parent shall attempt in good faith to resolve promptly any dispute arising hereunder.

(d) The section headings contained in this Escrow Agreement are solely for the purpose of reference, are not part of the agreement of the parties and shall not in any way affect the meaning or interpretation of this Escrow Agreement.

(e) This Escrow Agreement and the Acquisition Agreement embody the entire agreement and understanding of the parties hereto in respect of the transactions contemplated by the Escrow Agreement. There are no restrictions, promises, representations, warranties or undertakings, other than those expressly set forth or referred to herein or therein. This Escrow Agreement supercedes all prior agreements and understandings between the parties with respect to such transactions.

(f) All notices and other communications hereunder shall be in writing and shall be deemed given if delivered personally or mailed by registered or certified mail (return receipt requested), postage prepaid, telecopied (and which is confirmed) or sent by any reputable courier (providing proof of delivery) to the parties at the following addresses (or at such other address for a party as shall be specified by like notice, provided that notices of a change of address shall be effective only upon receipt thereof):

(i)    if to the Sellers, to:

      The Fairchild Corporation
      45025 Aviation Drive, Suite 400
      Dulles, Virginia 20166-7516
      Telecopy:    (703) 478-5775
      Attention:    General Counsel

      with a copy to:

      Cahill Gordon and Reindel
      80 Pine Street
      New York, New York 10005
      Telecopy:    (212) 269-5420
      Attention:    James J. Clark, Esq.
                       Luis R. Penalver, Esq.

(ii)    if to the Buyer, to:

      Alcoa Inc.
      390 Park Avenue
      New York, New York 10022-4608
      Telecopy:    (212) 836-2809

        Attention:    General Counsel

with a copy to:

Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, New York 10036-6522
Telecopy: (212) 735-2000
Attention:    J. Michael Schell, Esq.
                  Margaret L. Wolff, Esq.

(iii)    if to the Escrow Agent, to:

J.P. Morgan Trust Company, N.A.
One Oxford Centre
301 Grant Street, Suite 1100
Pittsburgh, PA 15219
Telecopy: 412-291-2070
Attention: Jo Anne Osborn

(g) This Escrow Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

(h) This Escrow Agreement and all of the provisions hereof shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns, but neither this Escrow Agreement nor any of the rights, interests or obligations hereunder shall be assigned by the parties hereto without the prior written consent of the other parties, nor is this Escrow Agreement intended to confer upon any other person except the parties hereto any rights or remedies hereunder.

(i) This Escrow Agreement shall be governed by the laws of the State of Delaware (regardless of the laws that might otherwise govern under applicable principles of conflicts of law) as to all matters, including but not limited to matters of validity, construction, effect, performance and remedies.

(j) Except as otherwise provided in this Escrow Agreement, any failure of the parties to comply with any obligation, covenant, agreement or condition herein may be waived by the party entitled to the benefits thereof only by a written instrument signed by the party granting such waiver, but such waiver or failure to insist upon strict compliance with such obligation, covenant, agreement or condition shall not operate as a waiver of, or estoppel with respect to, any subsequent or other failure. Whenever this Escrow Agreement requires or permits consent by or on behalf of a party, such consent shall be given in writing in a manner consistent with the requirements for a waiver of compliance as set forth in this Section 8(j).

(k) This Escrow Agreement is not intended to and shall not be construed to give any person (other than the parties to this Escrow Agreement) any interest or rights (including, without limitation, any third party beneficiary rights) with respect to or in connection with any agreement or provision contained herein or contemplated hereby.

(l) Subject to applicable Law, this Escrow Agreement may be amended, modified or supplemented only by written agreement of Parent, the Buyer and the Escrow Agent.

(m) If for any reason any term or provision of this Escrow Agreement is held to be invalid or unenforceable, all other valid terms and provisions hereof shall remain in full force and effect, and all of the terms and provisions of this Escrow Agreement shall be deemed severable in nature. If for any reason any term or provision containing a restriction set forth herein is held to cover an area or to be for a length of time which is unreasonable, or in any other way is construed to be too broad or to any extent invalid, such term or provision shall not be determined to be null, void and of no effect, but to the extent the same is or would be valid or enforceable under applicable Law, any court of competent jurisdiction shall construe and interpret or reform this Escrow Agreement to provide for a restriction having the maximum enforceable area, time period and other provisions (not greater than those contained herein) as shall be valid and enforceable under applicable Law.

IN WITNESS WHEREOF, the parties hereto have caused this Escrow Agreement to be signed by their respective duly authorized officers as of the date first above written.

THE FAIRCHILD CORPORATION

By: _____
Name:
Title:

ALCOA INC.

By: _____
　　Name: Barbara Jeremiah
　　Title: Executive Vice President

J.P.Morgan Trust Company, National Association, as Escrow Agent

By: _____
　　Name: Jo Anne Osborn
　　Title: Assistant Vice President

IN WITNESS WHEREOF, the parties hereto have caused this Escrow Agreement to be signed by their respective duly authorized officers as of the date first above written.

THE FAIRCHILD CORPORATION

By:_____
    Name:
    Title:

ALCOA INC.

By: *[signature]*
    Name: Barbara Jeremiah
    Title: Executive Vice President

J.P.Morgan Trust Company, National Association, as Escrow Agent

By:_____
    Name: Jo Anne Osborn
    Title: Assistant Vice President

IN WITNESS WHEREOF, the parties hereto have caused this Escrow Agreement to be signed by their respective duly authorized officers as of the date first above written.

THE FAIRCHILD CORPORATION

By:_____
   Name:
   Title:

ALCOA INC.

By:_____
   Name: Barbara Jeremiah
   Title: Executive Vice President

J.P.Morgan Trust Company, National Association, as Escrow Agent

By: *[signature]*
   Name: Jo Anne Osborn
   Title: Assistant Vice President

## SCHEDULE I

### Escrow Agent Fee Schedule

Acceptance Fee ..................................................................................................$500

    Including acceptance of contractual responsibility and establishment of administrative records and procedures to comply with the escrow documents.

Annual Administration Fee...............................................................................$3,000

    Including performance of specified duties and responsibilities under the escrow documents.

Other Activity Fees ............................................................................................$0.00

Investment Fees (Processing Individual Security Transactions) .......................$0.00

Mutual Fund transactions will be assessed an investment charge of 25 basis points against the average principal par value. Direct securities purchased or sold will be assessed a $50 per transaction charge. In the event we are asked to hold an investment contract/agreement, the applicable fee, and counsel fee, if any, will be negotiated at the time.

Investments in the Money Market Funds............................................................$0.00

Amendments to the Escrow Agreement ..............................................................$0.00

Sub-Accounts .......................................................................................................$0.00

Tax Reporting ................................................................................... As billed by provider

Out-of-pocket Expenses:

    Expenses of 6% of the Annual Administration Fee will be added to cover ordinary items such as postage, checks, stationery, printing, messenger deliveries, and telephone. Expenses for extraordinary services, such as, but not limited to, travel, legal and securities will be billed additionally. Legal fees of counsel representing the Escrow Agent are included in the Acceptance Fee.

Additional Terms and Conditions:

    Acceptance of the appointment is subject to terms of the Escrow Agreement being satisfactory to the Escrow Agent.

## SCHEDULE II

### Telephone Number(s) for Call-Backs and Person(s) Designated to Confirm Funds Transfer Instructions

If to the Buyer:

| | Name | Telephone Number |
|---|---|---|
| 1. | William Plummer | 212-836-2666 |
| 2. | Judith Schrecker | 412-553-4241 |

If to the Parent:

| | Name | Telephone Number |
|---|---|---|
| 1. | John L. Flynn | 703-478-5830 |
| 2. | Brad Lough | 703-478-5740 |
| 3. | Donald Miller | 703-478-5945 |

Telephone call-backs shall be made to the Buyer and the Parent if joint instructions are required pursuant to this Escrow Agreement.