

 **FAIRCHILDCORP**

February 25, 2005

Direct Dial:  703-478-5995
Fax:  877-405-1650
E-Mail: Shalk@Fairchild.com

John A. Lease
Alcoa, Inc.
201 Isabella Street
Pittsburgh, PA 15212-5858

Re:     Acquisition Agreement among Alcoa, Inc., The Fairchild Corporation, Fairchild
        Holding Corp., and Sheepdog, Inc., dated as of July 16, 2002, amended as of
        December 3, 2002 (the "Acquisition Agreement").

        Letter of January 25, 2005 Torrance, CA, Operations Groundwater Remediation
        Action, and Fullerton, CA Investigation Report

Dear Mr. Lease:

We received your letter of January 25 2005 regarding the Torrance and Fullerton facilities
including Table 1 showing a "Cost Summary" for the former Fairchild fastener operations in the
Los Angeles, California area.  We have also reviewed the Report of Soil and Groundwater
Investigation for Torrance dated December 2004 (Volumes I through III), the Report of
Preliminary Subsurface Environmental Investigation for Fullerton dated November 1, 2004, and
the invoices for environmental services provided by Mission GeoScience, Inc. relating to the
facilities at Fullerton, Torrance, and Unruh and Temple Avenue in City of Industry.  Our
response to Alcoa's request for indemnification follows.

The vast majority of the expenses incurred by Alcoa do not qualify for reimbursement pursuant
to Section 11.6 of the Acquisition Agreement.  Section 11.6(a) of the Acquisition Agreement
limits Fairchild's indemnification obligations to "Fastener Environmental Liabilities." That term
is defined in Section 11.6(e)(iv) as follows:

        "Fastener Environmental Liability" means all losses, damages, charges,
        liabilities, costs, expenses, deficiencies, fines, penalties, claims, demands, actions,
        suits or proceedings, including reasonable attorneys' and consultants' fees and
        expenses in connection therewith, and expenses of investigation incurred by a
        Buyer Indemnified Party after the Effective Time based on any applicable
        Environmental Laws existing on the Closing Date in respect of any Fastener
        Environmental Condition; provided that with respect to Environmental
        Contamination at a Fastener Business Asset, applicable Environmental Law shall
        include the Remediation Standards in each relevant jurisdiction that would be
        applicable or acceptable to properties such as the Fastener Business Real
        Properties or the properties leased pursuant to the Fastener Business Leases, based

**CONFIDENTIAL**



ALCOA
ARBITRATION
EXHIBIT
103

FC 00339

on the use and location of such properties as of the Closing Date, such that the performance of Remedial Action on such properties if Environmental Contamination is discovered above such standards shall be subject to indemnification under this Section 11.6.(subject to any other limitations in this Agreement) Fastener Environmental Liability shall not include (i) any consequential, special or punitive damages except in the case of fraud ...

A Fastener Environmental Condition is defined in Section 11.6(e) (iii) as follows:

"**Fastener Environmental Condition**" means any (A) Environmental Contamination or threatened Environmental Contamination arising out of any Release or threatened Release of Hazardous Materials arising out of the Fastener Business (which includes the Fastener Business Real Properties listed on Schedule 3.9), on-site (owned or leased) or at off-site, non-owned or non-leased locations that occurred on or prior to the Effective Time including, without limitation, at Pre-Closing Off-Site Disposal Locations; (B) Environmental Contamination at or migrating from the Fastener Business Assets prior to the Closing Date, whether or not such Environmental Contamination came into existence as a result of the Fastener Business or any other Person (including a predecessor owner or operator of the Fastener Business Assets); (C) any violation or alleged violation of, or noncompliance or alleged noncompliance with, applicable Environmental Law with respect to the Fastener Business that commenced prior to the Effective Time; or (D) any other circumstance or condition that occurred on or prior to the Effective Time that forms the basis for any Environmental Action against the Fastener Business or any Transferred Fastener Subsidiary (or any of their respective predecessors or successors).

In order for a liability to exist, it must be predicated on a "Fastener Environmental Condition." With one exception (i.e. known Environmental Contamination existing at the time of closing), Alcoa has not and cannot show the existence of the necessary Conditions. Alcoa has shown nothing that evidences contamination arising out of a release or threatened release. It can point to no violations or alleged violations of Environmental Law prior to closing. There were no Environmental Actions pending against Fairchild with respect to the sites at issue.

The Agreement requires that losses be based on environmental laws with respect to a release, threatened release, contamination at site, or any violation or alleged violation of environmental law existing at the time of closing. None of the various reports, assessments, or site characterizations undertaken by Alcoa was in response to a Fastener Environmental Condition. Without an Environmental Condition, Alcoa's commissioning various environmental assessments was and is an ordinary business expense voluntarily incurred by Alcoa.

In short, Alcoa can commission all the environmental assessments it wishes. Such assessments, be they environmental, workplace health and safety, or OSHA, are not Fastener Environmental Liabilities.[1] The expenses associated with implementing a remedy based on those assessments

---

[1] On a related matter, by letter dated February 26, 2004, we requested additional information regarding approximately $528,130.78 of Phase II assessment costs incurred by Alcoa. You have not provided such information. On further analysis, we have determined that for the same reasons expressed in this letter, the

CONFIDENTIAL

FC 00340

might qualify, but not the assessments themselves. Unless and until there is a Fastener Environmental Condition, there is no basis for indemnification.

Accordingly, the expenses detailed on Table 1 relating to various site "characterizations" are ordinary business expenses. Those expenses constitute approximately 84% of the total sum. Similarly, the costs relating to "remediation transition management," approximately 4% of the total, are not reimbursable. Neither of the foregoing is a Fastener Environmental Liability.

Furthermore, Alcoa was advised by letter dated February 26, 2004, that Fairchild wholly rejected any claims for expenses related to assessments of the Temple Avenue and Unruh Avenue sites in City of Industry. The Unruh Avenue site has no Fastener Environmental Condition. Alcoa already attempted to extract $68,275 in Phase II assessments pertaining to Unruh Avenue over a year ago. That claim was rejected. For Alcoa to have spent another $20,000 in additional "site characterization" costs along with $7,000 in "remediation transition management" is a measure of just how groundless these claims are. How can a site with no Fastener Environmental Conditions require remediation transition management, much less continued characterization?

Similarly, the Temple Avenue site was fully characterized prior to closing and was undergoing remediation at the time of sale. This fact was conveyed to you by letter of February 26, 2004, from Ernesto Beckford. Accordingly, these claims have already been addressed and are as baseless today as they were a year ago. The only expenses that might have been legitimate Fastener Environmental Liabilities are the groundwater remediation costs associated with the Temple Avenue facility. By reference to Table I attached to your letter, these remediation costs total $130,200. However, since Alcoa refused to honor its obligation to consult under Section 11.6(c) and provide prompt notice of Fastener Environmental conditions pursuant to Section 11.6(d), these expenses are challenged as well.

Likewise, the Fullerton facility had been fully characterized by June 2002. SCS Engineers completed two phases of an assessment and prepared a Remedial Action Plan, to which the regulatory authorities offered no objections. Nothing reported by Mission GeoScience in its Reports for this site is fresh information. Alcoa can continue to undertake site assessments and characterizations, but until Remedial Action is undertaken, there is no Fastener Environmental Liability that qualifies for indemnification under Section 11.6 of the Agreement.

Finally, the Torrance facility according to Alcoa's Phase I and II assessments shows signs of some environmental contamination. However, groundwater contaminants as Mission GeoScience reports are the likely product of "off-site, upgradient sources ...." Report of Soil and Groundwater Investigation, Dec. 2004; p. vii, 5-9, and 44. In any event, all of the assessments for this site, like all of the other assessments and characterizations, are not Fastener Environmental Liabilities. Unless and until Remedial Action commences, there is no basis for a claim under Section 11.6.

---

$528,130.78 in costs incurred by Alcoa are not indemnifiable. Such costs do not relate to a Fastener Environmental Condition; rather, they relate to Alcoa's "kicking the tires." These are not Fastener Environmental Liabilities and we reject any attempt by Alcoa to apply these sums against the $8,4510,000 Environmental Reserve. In short, all of Alcoa's claims for indemnification under Section 11.6 for environmental assessments, lock tag and verify assessments, machine guarding assessments, or any other assessments or characterizations, are rejected entirely.

**CONFIDENTIAL**

And lastly, as you should know, Section 11.6(c) requires Alcoa to consult with and provide information to Fairchild with respect to Fastener Environmental Liabilities. Section 11.6(d) requires prompt written notice of matters which may give rise to an indemnification obligation. No information was imparted, no consultation was sought, and no prompt notice was given with respect to any of the expenses incurred and actions undertaken by Alcoa on the matters under review.

For the foregoing reasons, we entirely reject all of Alcoa's claims for costs relating to reports, investigations, and characterizations of sites, or any similar assessments howsoever denominated. We further reject and dispute any attempt by Alcoa to apply any of these alleged expense against the $8,450,000 Environmental Reserve established under the Acquisition Agreement.

Very truly yours,

Susan L. Hall
Environmental Counsel

cc:     Donald E. Miller
        John Flynn
        Ernesto Beckford
        Carla Abbud

        J. Michael Schell, Esq. (w/ 12/23/04 letter)     General Counsel (w/ 12/23/04 LTV letter)
        Margaret L. Wolff, Esq.                          Alcoa, Inc.
        Skadden Arps Slate Meagher & Flom                390 Park Avenue
        Four Times Square                                New York, NY 10022-4608
        New York, NY 10036-6522

CONFIDENTIAL

FC 00342