CPR INSTITUTE FOR DISPUTE RESOLUTION

------------------------------------x

THE FAIRCHILD CORPORATION,                :

                Claimant,                :

- against -                               :     Hon. James Stapleton

                          :

ALCOA INC.,                               :

                Respondent.             :

                          :

------------------------------------x

## CLAIMANT FAIRCHILD'S FIRST SET OF INTERROGATORIES

Pursuant to Scheduling Order # 2, Claimant The Fairchild Corporation ("Fairchild"), by its undersigned attorneys, hereby requests that Respondent Alcoa Inc. ("Alcoa") respond to the following Interrogatories in accordance with the Definitions and Instructions provided herein.

## DEFINITIONS

a)    The term "Agreement" as used herein refers to the Acquisition Agreement, dated July 16, 2002 among Alcoa Inc., The Fairchild Corporation, Fairchild Holding Corp. and Sheepdog, Inc., as amended on December 3, 2002.

b)    The term "Action" as used herein refers to this arbitration filed by Claimant against Alcoa Inc. with the CPR Institute for Dispute Resolution on July 20, 2005 and all claims and counterclaims asserted therein.

c)  The terms "Alcoa" or "Respondent" as used herein refer to Respondent Alcoa Inc., its predecessors, successors, subsidiaries, divisions, affiliates, officers, directors, attorneys, employees, agents, representatives, accountants, attorneys, advisors, and all other persons acting or purporting to act on its behalf.

d)  The word "any" shall be construed to include "all" and vice versa.

e)  The term "concerning" means directly or indirectly, in any way relating to, referring to, pertaining to, reflecting, describing, evidencing, memorializing or constituting.

f)  The term "document" means any writing, drawing, graph, chart, photograph, phonorecord, tape recording, digital voice and data recordings, e-mail, electronic or computerized data compilation, or other data compilation from which information can be obtained, translated, if necessary, through detection devices into reasonably usable forum. A draft or non-identical copy is a separate document within the meaning of this term.

g)  The term "Effective Time" as used herein shall have the same meaning as that term is used in the Agreement and as set forth in Section 1.42 of that Agreement.

h)  The term "Environmental Law" as used herein shall have the same meaning as that term is used in the Agreement and as set forth in Section 3.24(g)(ii) of that Agreement.

i) The term "Fastener Business" as used herein shall have the same meaning as that term is used in the Agreement and as set forth in Section 1.56 and the preamble of that Agreement.

j) The term "Fastener Environmental Condition" as used herein shall have the same meaning as that term is used in the Agreement and as set forth in Section 11.6(e)(iii) of that Agreement.

k) The term "Fastener Environmental Liability" as used herein shall have the same meaning as that term is used in the Agreement and as set forth in Section 11.6(e)(iv) of that Agreement.

l) The word "including" means "including without limitation."

m) "Person" or "Persons" means all natural persons, corporations, partnerships, limited partnerships, syndicates and all other legal business entities.

n) The term "Remedial Action" as used herein shall have the same meaning as that term is used in the Agreement and as set forth in Section 11.6(e)(vi) of that Agreement.

o) The term "Tax Benefit" as used herein shall have the same meaning as that term is used in the Agreement and as set forth in Section 1.132 of that Agreement.

p)   The term "Transferred Fastener Subsidiary" as used herein shall have the same meaning as that term is used in the Agreement and as set forth in Section 1.140 of that Agreement.

## INSTRUCTIONS

1. These interrogatories are of continuing effect, and to the extent that at any time after the answers are submitted, you become aware of or acquire additional information responsive to any of the interrogatories, such information shall be furnished promptly.

2. If any of the interrogatories cannot be answered in full, answer to the extent possible, specifying the reasons for your inability to answer the remainder and stating whatever information, knowledge or belief you do have concerning the unanswered portion.

3. Write each interrogatory in full before each answer.

4. Answer each interrogatory separately. When an interrogatory has several parts, answer each part separately.

5. Wherever necessary to ensure completeness or accuracy of these interrogatories, the singular shall include the plural and the past tense shall include the present tense and vice versa, and the masculine shall be construed to include the feminine and vice versa.

6. The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the interrogatory all information that would be excluded if such words were not so construed.

7. If an objection is made to an interrogatory, or any portion thereof, specify the precise ground of the objection.

8. To the extent, if any, that you view any interrogatory to be vague or imprecise, counsel for Claimant offers to confer with counsel for Respondent as to the intended scope of such interrogatory prior to your response to these interrogatories.

### **INTERROGATORIES**

Interrogatory No. 1: Identify, on an invoice by invoice basis, each and every claimed Fastener Environmental Liability for which Alcoa seeks indemnification from Fairchild in Alcoa's counterclaim in this Action, providing: (a) a qualitative description of each claim, (b) a quantification of the amount of each claim (or, where precision is not possible, your best estimate), (c) the date the invoice was paid or the date that Alcoa anticipates paying the invoice, and (d) identifying any documents that support each claim for indemnification.

Interrogatory No. 2: For each claim identified in response to Interrogatory No. 1, identify: (a) the purported Fastener Environmental Condition on which the claim is based, using the categories set forth in Section 11.6(e)(iii) of the Agreement, (b) the date on which Alcoa contends the Fastener Environmental Condition came into existence (or your best estimate), (c) the basis of that contention, (d) any documents that relate to the date on which the purported Fastener Environmental Condition allegedly came into existence; and (e) the date the alleged Fastener Environmental Condition was discovered by Alcoa.

Interrogatory No. 3: For each claim identified in response to Interrogatory No. 2(a) as being based on a purported "violation or alleged violation of, or noncompliance or alleged noncompliance with, applicable Environmental Law with respect to the Fastener Business that commenced prior to the Effective Time" (as provided in Section 11.6(e)(iii)(C) of the Agreement): (a) identify and provide a citation for the specific Environmental Law(s) on which the claim is allegedly based; and (b) provide a description of the purported "violation or alleged violation of, or noncompliance or alleged noncompliance with" that Environmental Law existing at the Effective Time.

Interrogatory No. 4: For each claim identified in response to Interrogatory No. 1: (a) identify any Remedial Action that Alcoa contends it took or is in the process of taking in response to that claim, (b) identify any documents concerning the relationship between that claim and the purportedly related Remedial Action, (c) identify the purported Fastener Environmental Condition that the Remedial Action allegedly responded to, and (d) provide an explanation as to why Alcoa contends such Remedial Action was or is necessary to address a Fastener Environmental Condition.

Interrogatory No. 5: For each Remedial Action identified in response to Interrogatory No. 4: (a) identify any other actions proposed to, considered by, or evaluated by Alcoa for responding to the purported Fastener Environmental Condition giving rise to the Remedial Action, and (b) a quantification of the cost of each such proposed, considered, or evaluated action (or, where precision is not possible, your best estimate).

Interrogatory No. 6: With respect to each of the alleged Fastener Environmental Conditions identified in response to Interrogatory No. 2, identify those with respect to which Alcoa had communications with any local government agency concerning such alleged Fastener Environmental Condition, providing (a) the name of the government agency; (b) the date(s) of the communication(s); (c) a summary of the subject matter of the communication(s), including whether Alcoa requested any assistance from that agency regarding the alleged Fastener Environmental Condition; (d) a summary of any government action taken, or assistance provided to Alcoa, related to the alleged Fastener Environmental Condition; and (e) identification of any documents concerning such communications.

Interrogatory No. 7: For each claim identified in response to Interrogatory No. 1, identify all persons, including but not limited to any current or former employees or outside consultants, involved in the discovery of the alleged Fastener Environmental Condition and/or the determination that such a Fastener Environmental Condition exists (or existed).

Interrogatory No. 8: For each claim identified in response to Interrogatory No. 1, identify all persons, including but not limited to any current or former employees or outside consultants, involved in planning and deciding the Remedial Action actually undertaken by Alcoa.

Interrogatory No. 9: Describe the guidelines used by Alcoa in determining whether to submit certain costs as Fastener Environmental Liabilities of the Agreement and identify any documents relating to such guidelines.

Interrogatory No. 10: Identify and produce (if not already produced) any documents in Alcoa's possession concerning the negotiation or drafting history of Section 11.6 of the Agreement.

Interrogatory No. 11: Identify and produce any documents in Alcoa's possession concerning: (a) any meeting between Alcoa representatives and Fairchild representatives held in or around June or July of 2002 at which Alcoa made a presentation (using an easel and a chart) regarding the calculation of the environmental reserve negotiated by the parties, and (b) documents provided by Alcoa representatives to Fairchild representatives, including Michael Hodge, on or about November 8, 2002.

Interrogatory No. 12: State the amount of any Tax Benefit that Alcoa has recognized in any tax period subsequent to the closing of the sale of the Fastener Business to Alcoa on December 3, 2002 that was the result of Alcoa's utilization of any French net operating loss of any Transferred Fastener Subsidiary organized in France that Alcoa had carried forward from any tax period prior to the closing of the sale of the Fastener Business.

Interrogatory No. 13: Identify by Bates number all documents produced in response to each of the categories listed in Claimant's Request No. 7 in its Second Request for the Production of Documents.

Interrogatory No. 14: Identify all agreements to which Alcoa has been a party at any time since 1980 which contain a provision granting indemnification, in whole or in part, to Alcoa concerning any environmental-related liabilities (including, without limitation, any liabilities relating to actual or alleged violations of, or actual or alleged non-compliance

with, any Environmental Law) incurred by Alcoa for any period of time, providing (a) a list of all parties to that agreement; (b) a description of the indemnification provided or the text of the indemnification clause; and (c) the date on which the agreement was executed. For each agreement identified, state whether Alcoa has been a party to any mediation, arbitration and/or litigation relating to claims made by it for indemnification under that agreement and, if so, the disposition or current status of that proceeding.

Interrogatory No. 15: Identify each person whom you expect to call as a non-expert witness at the hearing in this Action; and disclose in reasonable detail the subject matter on which each witness is expected to testify and the substance of the facts to which each witness is expected to testify.

Dated: August 15, 2006

CAHILL GORDON & REINDEL LLP

By: _____
    Adam Zurofsky
    Tammy L. Roy
80 Pine Street
New York, New York 10005
(212) 701-3000

*Attorneys for The Fairchild Corporation*

-9-