UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

---

THE FAIRCHILD CORPORATION,

                               Petitioner,

                 -against-

ALCOA INC.,

                               Respondent.

---

07-CV-6185 (VM)

## PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF ITS PETITION TO VACATE ARBITRATION AWARD

Adam Zurofsky
Tammy L. Roy
Andrew Madar
CAHILL GORDON & REINDEL LLP
80 Pine Street
New York, New York  10005
(212) 701-3000

*Attorneys for Petitioner*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................1

BACKGROUND .........................................................................................................2

ARGUMENT ...............................................................................................................4

I.      THE FEDERAL ARBITRATION ACT PROVIDES FOR THE VACATUR OF AN
        ARBITRATION AWARD WHERE THE ARBITRATOR REFUSES TO HEAR
        EVIDENCE PERTINENT AND MATERIAL TO THE CONTROVERSY ....................4

II.     THE AWARD SHOULD BE VACATED ...................................................................6

        A.      The Arbitrator Refused to Hear Evidence Pertinent and Material to the
                Controversy by Failing to Require any Proof of Actual Damages ...................... 6

        B.      The Award Is Based on Numerous Serious Errors ............................................... 12

CONCLUSION ...........................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page**

<u>Cases</u>

*Duferco International Steel Trading* v. *T. Klaveness Shipping A/S*, 333
    F.3d 383 (2d Cir. 2003) ........................................................................ 4n

*Home Indemnity Co.* v. *Affiliated Food Distributors, Inc.*, No. 96 Civ.
    9707, 1997 WL 773712 (S.D.N.Y. Dec. 12, 1997) ............................ 5, 6

*New Broad Co.* v. *Bay Chester Marble & Tile Co.*, 147 N.Y.S.2d 831
    (N.Y. City Ct. 1956) .......................................................................... 6-7

*Odfjell ASA* v. *Celanese AG*, 380 F. Supp. 2d 297 (S.D.N.Y. 2005) ...................... 5-6

*Petrolane Inc.* v. *Texas Eastern Corp.*, No. Civ. A. 18854, 2003 WL
    21999420 (Del. Ch. Aug. 22, 2003), *aff'd*, 841 A.2d 308 (Del. 2004).............. 6

*Reed Paving, Inc.* v. *Glen Avenue Builders, Inc.*, 148 A.D.2d 934 (4th
    Dep't 1989) ........................................................................................ 11n

*Teamsters, Chauffeurs, Warehousemen and Helpers,, Local Union No. 506*
    v. *E.D. Clapp Corp.*, 551 F. Supp. 570 (N.D.N.Y. 1982), *aff'd*, 742
    F.2d 1441 (2d Cir. 1983) .................................................................. 6

*Tempo Shain Corporation* v. *Bertek, Inc.*, 120 F.3d 16 (2d Cir. 1997) .................. 4-5


<u>Statutes</u>

Federal Arbitration Act

    9 U.S.C. § 1 .......................................................................................... 4

    9 U.S.C. § 10 ........................................................................................ 1, 4

The Fairchild Corporation ("Fairchild") respectfully submits this memorandum of law in support of its petition, pursuant to the Federal Arbitration Act, 9 U.S.C. § 10, to vacate the June 21, 2007 arbitration award (the "Award") rendered in an arbitration between Fairchild and Alcoa Inc. ("Alcoa").

## PRELIMINARY STATEMENT

This petition implicates a well-established basis for vacating an arbitration award — the failure by an Arbitrator to receive and consider evidence on material issues. Indeed, the issue on which the Arbitrator refused to receive and consider evidence — whether Alcoa actually sustained the damages it claimed and was awarded — could not be more central. The arbitration at issue arose out of an indemnification provision in an agreement between the parties and Alcoa's claim that it had incurred approximately $16 million in indemnifiable losses. Fairchild challenged those claims on a variety of grounds, including Alcoa's failure to introduce any evidence that Alcoa actually incurred the claimed expenses on the projects for which it sought indemnity. While Alcoa consistently claimed that it had such evidence, prior to the hearing it flatly refused to identify the pertinent materials in response to an interrogatory. Then, at the hearing, Alcoa chose not to introduce this claimed evidence. Later, and in response to Fairchild's challenges, Alcoa did offer to provide the materials to the Arbitrator. The Arbitrator, however, refused to receive or consider this evidence, despite Fairchild's repeated express arguments on this issue and Alcoa's offer (late and half-hearted, though it was). Indeed, at no point did the Arbitrator ask to see the types of materials reasonable people think of as evidence of expenditures — invoices, cancelled checks, receipts, *etc*. Instead, the Arbitrator effectively took Alcoa's assertions on faith and came to the blanket conclusion that Alcoa had met its burden for each and every dollar it claimed and issued the Award based on that conclusion.

While Fairchild is mindful of the public policy arguments that generally favor upholding arbitration awards, an equally, if not more, important principle is at issue here: factual disputes should be adjudicated by consideration of meaningful *evidence*, not blind adoption of

*ipse dixit* assertions. Indeed, the Arbitrator's refusal to receive and consider material evidence that Alcoa claimed existed on a fundamental question in the case, among other errors, respectfully leads to only one conclusion: the Award should be vacated.

## BACKGROUND

The indemnification dispute underlying this petition arises out of a December 3, 2002 agreement (the "Agreement") by which Fairchild agreed to sell to Alcoa its "Fastener Business" for approximately $657 million in cash and the assumption of certain liabilities (the "Acquisition"). A copy of the Agreement is attached as Exhibit 1 to the July 2, 2007 Affidavit of Tammy L. Roy ("Roy Aff."). In the Agreement, Fairchild agreed, subject to various conditions, to indemnify Alcoa for certain "Fastener Environmental Liabilities" (defined in the Agreement) incurred by Alcoa following the Acquisition in excess of a negotiated $8.45 million reserve (the "Reserve"). Roy Aff. Ex. 1 (Agreement at 82).

From the December 3, 2002 closing of the transaction through December 19, 2006, Alcoa submitted over 200 claims for indemnification to Fairchild, which it asserts total $16,385,463.92. Roy Aff. Ex. 2 at 6-11. In a series of letters prior to the arbitration, Fairchild disputed the validity and amount of each of these claims. Among the grounds cited by Fairchild was Alcoa's failure to provide proof that it actually spent the money it was claiming on the projects it had identified. An example of one such letter is attached as Exhibit 3 to the Roy Aff. ("[T]he 'Cost Documentation' attached as Attachment A to your letter is a paper heap masquerading as an accounting . . . . Just a cursory review of the 'documentation' relating to the facilities in the U.S.A. reveals the following . . . [c]redit issued by vendor not applied . . . [h]andwritten figures charged to Fairchild in amounts greater than the vendor invoice.").

The parties could not resolve their differences either in direct discussions or through mediation and thus, pursuant to an arbitration provision in the Agreement, an arbitration proceeding before a single arbitrator was commenced under the auspices of the International Institute for Conflict Prevention & Resolution ("CPR").

The Arbitration was held in two sessions in New York in January and February 2007 before arbitrator James Stapleton. As discussed in more detail in Section II below, before, during, and after the arbitration Fairchild consistently asserted that Alcoa had not and could not provide the kind of support for its claims that people in the everyday world look to in determining whether expenses have been incurred — *i.e.*, invoices, cancelled checks, payment stubs, receipts, *etc.* Indeed, despite almost two weeks of testimony and two rounds of post-hearing briefing, at no time did Alcoa ever submit proof of its alleged damages. Fairchild highlighted this error in its post-hearing submission. Fairchild pointed out that such a failure is grounds for the denial of each of Alcoa's claims, but nonetheless requested that "[a]t a minimum Alcoa should not be awarded any indemnification unless and until it produces credible evidence showing actual expenditures on items and Fairchild has the ability to examine that evidence." Roy Aff. Ex. 4 at 7 n.2. In response, Alcoa offered (albeit belatedly) to submit 14 volumes of invoices that it asserted would support its $16 million in expenses — evidence that was never presented, let alone verified by a competent witness, at the hearing. The Arbitrator refused to receive these documents into the record.

Instead, in issuing the Award on June 21, 2007, the Arbitrator broadly held without citation that "Alcoa has sustained its burden of proof that the expenditures were in fact made in the amounts claimed." Roy Aff. Ex. 5 (Award at 21). While the Arbitrator did disallow approximately $3.3 million of Alcoa's claims (on grounds other than a failure by Alcoa to establish actual expenditures), the Arbitrator found that Alcoa had incurred approximately $13.5 million in qualified expenses. *Id.* This finding is fundamentally flawed because there was no evidence in the record actually verifying Alcoa's alleged expenses. Instead, it appears that the Arbitrator *assumed* that Alcoa had the back-up it claimed, but never received it, evaluated it, or allowed it to be tested. To put the matter in its starkest terms, the Arbitrator awarded over $13 million in indemnifiable expenses based only on a list prepared by Alcoa (Roy Aff. Ex. 2).

3

The Arbitrator's refusal to receive undeniably material evidence — which Fairchild believes would show that Alcoa could not, in fact, substantiate its claim of damages — and allow Fairchild to cross-examine a competent Alcoa witness (if one exists) with respect thereto, constitutes sufficient grounds to vacate the Award.

## **ARGUMENT**

### I.     THE FEDERAL ARBITRATION ACT PROVIDES FOR THE VACATUR OF AN ARBITRATION AWARD WHERE THE ARBITRATOR REFUSES TO HEAR EVIDENCE PERTINENT AND MATERIAL TO THE CONTROVERSY

Section 10 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, enumerates four grounds upon which a court may vacate an arbitration award.  Specifically, the FAA allows vacatur:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).  Most relevant here is the provision allowing the Court to vacate an award "where the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy." 9 U.S.C. § 10(a)(3).[1]

In determining whether to vacate an award under section 10(a)(3), courts examine whether the hearing before the arbitrator was fundamentally fair. *Tempo Shain Corporation* v.

---

[1] Courts may also vacate an arbitration award that "exhibits a manifest disregard of law." *Duferco International Steel Trading* v. *T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003) (internal quotation marks omitted).

*Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997), *Home Indemnity Co.* v. *Affiliated Food Distributors, Inc.*, No. 96 Civ. 9707, 1997 WL 773712, at *3 (S.D.N.Y. Dec. 12, 1997). While the arbitrator "need not follow all the niceties observed by the federal courts," the arbitrator still "must give each of the parties to the dispute an adequate opportunity to present its evidence and argument." *Tempo Shain*, 120 F.3d at 20 (internal quotation marks and citations omitted).

Admittedly, judicial review of arbitration awards is "narrowly limited," and such awards "are generally accorded great deference under the FAA." *Tempo Shain*, 120 F.3d at 19. Nonetheless, courts in this District have reversed arbitration decisions where the arbitrator(s) refused to hear pertinent evidence. For example, in *Tempo Shain*, an arbitration where the parties asserted claims of fraudulent inducement and breach of contract, the respondent intended to call a witness who would provide "crucial testimony" about the negotiation of the contracts and the communications between the parties. *Id.* at 17. After the witness became unavailable, the respondent requested that the panel keep the record open until the witness could testify. *Id.* at 18. Instead, the arbitration panel concluded the hearings with an award in favor of the petitioners. *Id.* The panel found that the witness's testimony would be cumulative, as he would have been simply "speaking through" letters he wrote and reports he received. *Id.* at 20. In vacating the award, the Second Circuit concluded that "there was nothing to suggest" that the proffered testimony had already been addressed by documents in evidence. *Id.* Specifically, while the witness would have testified as to the fraudulent inducement claims, the letters and reports in evidence addressed only problems which gave rise to disputes between the parties, and not the inducement to enter into the contracts themselves. *Id.* In not hearing this testimony, the court concluded that the arbitrator allowed the petitioners "unsupported oral testimony" concerning the respondent's representations to go unrebutted. *Id.*

Other courts in the Circuit have similarly faulted arbitrators for refusing to hear pertinent evidence. *See, e.g., Odfjell ASA* v. *Celanese AG*, 380 F. Supp. 2d 297, 303 (S.D.N.Y. 2005) (abuse of discretion where arbitration panel did not allow a non-party witness to present

evidence of attorney-client privilege before making its final ruling on the privilege issue); *Home Indemnity Co.*, 1997 WL 773712, at *4 (award vacated for "fundamental unfairness" where the arbitrator refused to hear evidence); *Teamsters, Chauffeurs, Warehousemen and Helpers, Local Union No. 506* v. *E.D. Clapp Corp.*, 551 F. Supp. 570, 578 (N.D.N.Y. 1982) (hearing was fundamentally unfair where union was "not given an opportunity to complete its presentation of proof regarding the . . . merits of the grievances then under consideration"), *aff'd*, 742 F.2d 1441 (2d Cir. 1983). The same result is warranted here.

## II.    THE AWARD SHOULD BE VACATED

The Arbitrator in this case committed a number of fundamental errors, the most prominent of which was his refusal to hear evidence that Alcoa claimed it had (but chose not to present) bearing on the basic questions of: (i) did Alcoa actually suffer damages? and (ii) if so, in what amount? As discussed below, this error warrants vacatur of the Arbitration Award.

### A.    The Arbitrator Refused to Hear Evidence Pertinent and Material to the Controversy by Failing to Require any Proof of Actual Damages

A prerequisite to any claim for contractual indemnification is, of course, proof of expenses actually incurred. Similarly, there is no dispute that, as the party seeking indemnity, Alcoa (and Alcoa alone) bears the burden of establishing its asserted damages through the introduction of competent evidence of actual expenditures. *See, e.g., Petrolane Inc.* v. *Texas Eastern Corp.*, No. Civ. A. 18854, 2003 WL 21999420, at *5 (Del. Ch. Aug. 22, 2003) (holding that plaintiff-indemnitee had the burden to prove by a "preponderance of the evidence" that the disputed liability qualified for indemnification and denying plaintiff's indemnification claim where plaintiff "ha[d] failed to carry its burden of proof on this issue"), *aff'd*, 841 A.2d 308 (Del. 2004).[2] *See also New Broad Co.* v. *Bay Chester Marble & Tile Co.*, 147 N.Y.S.2d 831, 835 (N.Y. City Ct. 1956) (quoted in *Petrolane*) (holding that plaintiff-indemnitee had "the burden to

---

[2]    Pursuant to Section 10.8 of the Agreement, the parties' indemnification disputes are governed by Delaware law. Roy Aff. Ex. 1 (Agreement at 76).

6

establish the contract of indemnification and *all material elements of its cause of action*") (emphasis added).

Here, as demonstrated below, both Alcoa and the Arbitrator failed in this regard. Alcoa failed by first stonewalling Fairchild's discovery efforts on this point and then by failing to introduce evidence of actual expenditures into the record. The Arbitrator failed first by refusing to hear Alcoa's purported evidence (and allowing Fairchild to cross-examine Alcoa on it) and then by relieving Alcoa of meeting its burden by assuming Alcoa had met that burden simply because Alcoa asserted that it could (even if it never did).

Leading up to the hearing, no one could doubt that Fairchild intended to challenge Alcoa's ability to meet its burden in proving actual expenditures. For example:

- In response to Alcoa's pre-arbitration demands for indemnification for over 200 projects it conducted at 14 facilities worldwide, Fairchild requested documentation for Alcoa's purported expenses and questioned the sufficiency of the handful of invoices provided by Alcoa. Roy Aff. Ex. 6 at 1-2 ("[P]lease provide us with specific and complete background documentation supporting the items and estimated costs summarized in the table. Such documentation should include copies of any . . . cost analyses prepared by or for Alcoa."); Roy Aff. Ex. 3 at 2 ("[T]he 'Cost Documentation' attached as Attachment A to your letter is a paper heap masquerading as an accounting . . . . Just a cursory review of the 'documentation' relating to the facilities in the U.S.A. reveals the following . . . [c]redit issued by vendor not applied . . . [h]andwritten figures charged to Fairchild in amounts greater than the vendor invoice."); Roy Aff. Ex. 7 at 2 ("Alcoa has sought reimbursement for . . . expenses without adequate documentation and no invoices."). Although Alcoa at first expressly promised to provide such information, ultimately Alcoa refused to produce any supporting documenta-

tion for its asserted expenses. Roy Aff. Ex. 8 at 2 ("We will provide Fairchild with further documentation to support the estimates developed for the . . . facilities. The documentation is being compiled for each project and will consist of such items as scopes o[f] work, consultant proposals, summary reports and invoices. We will provide you with this documentation in a timely manner once it is complete for your review."). Alcoa broke these promises.

- In discovery before the hearing, Fairchild continued to seek proof of Alcoa's actual expenses. For instance, Fairchild sought all documents on which Alcoa based its indemnification claims — a request that led to the production of over 70 boxes of documents without any identification of which documents reflected work *actually* done and money *actually* spent. In fact, later, at the hearing, Alcoa argued repeatedly that the documents it produced in discovery in the arbitration do *not* necessarily reflect work done and expenses incurred. *See, e.g.*, Roy Aff. Ex. 9 (Hearing Tr. at 3145-46) (Q: "[O]n page 2011 is this an actual bill or is that just an estimate, I guess it is a bill." A: "It looks like an invoice to me." THE ARBITRATOR: "Does that indicate to you this work was done?" A: "That's correct." MR. SLIFKIN [Counsel for Alcoa]: "Objection, your Honor, if the witness is testifying this work was done, he has absolutely no foundation for that. I wouldn't want you to be misled by that."). *See also id.* (Hearing Tr. at 3233-34) (Q [by Alcoa's counsel]: "Now you have seen all the documents. You still can't figure out what was actually done on the machines; can you?").

- Similarly, in its very first interrogatory Fairchild specifically requested that Alcoa "[i]dentify, on an invoice by invoice basis, each and every claimed

[FEL] for which Alcoa seeks indemnification." Alcoa refused to provide the information. Roy Aff. Ex. 10 at 3-6.

- Right before the hearing, Fairchild again insisted — and Alcoa acknowledged — that Alcoa had the burden of introducing invoices, receipts, and other proofs of payment for its claims. Specifically, in the days leading up to the hearing, the parties conferred regarding possible stipulations of fact. Alcoa's counsel requested that Fairchild stipulate that the amounts Alcoa claimed were actually expended by Alcoa to avoid having to present what counsel characterized as voluminous documentary evidence of its actual expenses. Roy Aff. Ex. 11 at 1-2. Given the continued difficulty that Fairchild faced in matching up any of the documents provided by Alcoa with its claim of over $16 million in expenses (despite Fairchild's numerous requests for back-up documentation dating back to 2003), Fairchild could not agree to this proposed stipulation. Fairchild did, however, offer to stipulate that Alcoa had expended the amounts it claimed *if* Alcoa had the amounts verified by an independent accountant. Alcoa refused to do so. *Id.* at 5 n.1.

Despite all of this, Alcoa did not present **any** evidence at the hearing — such as receipts, accountings, ledger entries, checks, *etc.* — in support of the accuracy of its proffered numbers. Nor did a single Alcoa witness testify that s/he had reviewed the applicable invoices and proofs of payments and could verify Alcoa's asserted numbers. Moreover, while Alcoa hired a team of expert witnesses to examine the underlying projects it had conducted at the 14 facilities, these expert witnesses testified that they were not asked to and therefore did not attempt to audit or reconcile the invoices and expenses claimed by Alcoa. Roy Aff. Ex. 12 (Hearing Tr. at 1745:16-23); Ex. 13 (Hearing Tr. at 1207:20-22).

In post-hearing briefing, Fairchild pointed out what should have been already obvious: that "Alcoa has failed to meet its burden of showing that it actually incurred the expenses it

claims and that it incurred them on qualified Fastener Environmental Liabilities ('FELs')." Roy Aff. Ex. 4 at 3. While such a failure should preclude recovery of any amount, Fairchild further requested that "[a]t a minimum Alcoa should not be awarded any indemnification unless and until it produces credible evidence showing actual expenditures on items and Fairchild has the ability to examine that evidence." *Id.* at 7 n.2.

Without leave, Alcoa submitted a sur-reply letter brief on the subject. The most revealing aspect of the letter was Alcoa's offer to "promptly produce" to the Arbitrator "all of the invoices it produced to Fairchild for each of its claims — a total of 14 volumes of documents." Roy Aff. Ex. 14 at 2.[3] These, of course, are the same documents that Fairchild asked Alcoa to identify during discovery and that Fairchild insisted Alcoa present at the hearing. Instead of accepting these documents into the record and allowing Fairchild the opportunity to review them and cross-examine Alcoa regarding them, the Arbitrator refused this evidence.

In its sur-reply, Alcoa also asserted that the testimony of one of its witnesses, John Lease, who had introduced a list itemizing Alcoa's indemnification claims, constituted proof of its damages. Roy Aff. Ex. 15 (Hearing Tr. at 984-986). The excerpt of testimony which Alcoa cited was a line of questioning regarding the distinction between certain asterisked items in the list presented. Mr. Lease had testified that the asterisked entries reflected "projects [Alcoa] anticipated spending money for in the future so we included them" and the non-asterisked items reflected "liabilities that [Alcoa] had incurred up to this point." *Id.* (Hearing Tr. at 983-84). This testimony did not go to the accuracy of the claimed numbers. In fact, on this point, Mr. Lease could not testify. Mr. Lease was never "involved in reviewing the invoices" for the underlying projects. Roy Aff. Ex. 16 (Lease Dep. at 245-46). Further, Mr. Lease testified that he did not know what work had actually been done on specific projects. Roy Aff. Ex. 15 (Hearing Tr. at

---

[3]  As previously noted, while Alcoa produced a document dump during discovery, it refused to identify to Fairchild, or to the Arbitrator, which documents in that dump related to work actually spent and which did not. This refusal is all the more troubling given Fairchild's express request for such information by way of an interrogatory and Alcoa's counsel's own repeated challenges to the notion that the documents Alcoa produced reflected actual work done and expenses incurred.

1025-27) (Lease testifying that he did not "know what aspects of [the consultant's] report were actually converted into an actual project"; "[t]hat was a local decision at the plant."); Roy Aff. Ex. 16 (Lease Dep. at 224-25) (Lease testifying that after the project was approved, "[t]he work that followed from that was directed by the plant folks. I don't know specifically how they managed the on-site work by the consultant."). Mr. Lease's testimony, then, could have no evidentiary value on the issue of actual damages.[4]

   Moreover, as Mr. Lease made clear at the hearing, previous versions of this list were riddled with errors:

> "Q. This is for the record Alcoa Exhibit C, bulk Exhibit C beginning at page 7924; right?
>
> A. Correct.
>
> Q. In this one did you correct a couple of math errors or accounting errors?
>
> A. I believe that we did at this point. We cleared up some of the misstatements we had made in the earlier table." Roy Aff. Ex. 15 (Hearing Tr. at 949:17-25).
>
>     *   *   *   *
>
> "Q. Now, go to tab 38 . . . Is this yet another chart you provided to [Fairchild], this one in December of this past year, '06?
>
> A. That's correct. Yes . . . .
>
> Q. Did you in fact correct item 25?
>
> A. Yes, we did. We discovered an accounting error in our records so we reduced the amounts by $90,620 which was exactly half.
>
> Q. Similarly if you go to page 24003, the last item on that page, number 155 was this another accounting error that was corrected?
>
> A. Yes, it is.
>
> Q. You reduced this one by $39,000 and change?

---

[4] *See, e.g., Reed Paving, Inc.* v. *Glen Avenue Builders, Inc.*, 148 A.D.2d 934, 935 (4th Dep't 1989) (holding that "[p]roof of damages may be based upon oral testimony alone, so long as the witness has knowledge of the actual costs" and finding witness was competent where he was "completely familiar with the actual costs involved" and had "supervised the work on the project"). Mr. Lease's testimony fails this test in spectacular fashion.

A.    Correct." Roy Aff. Ex. 15 (Hearing Tr. at 951:9-952:4).[5]

In short, nothing Alcoa introduced at the hearing constituted evidence of actual expenditures. Despite this, and despite Alcoa's post-hearing proffer to submit what would constitute actual evidence — invoices, receipts, and the like — the Arbitrator held without explanation or citation that "Alcoa has sustained its burden of proof that the expenditures were in fact made in the amounts claimed."[6] Roy Aff. Ex. 5 (Award at 21). That finding cannot be sustained. The Arbitrator was wrong to assume that Alcoa had established its damages just because Alcoa said it could. Respectfully, that is not the way factual disputes should be decided. The Arbitrator's refusal to require actual evidence on this point and to consider pertinent and material evidence proffered warrants vacatur of the Award.

**B.    The Award Is Based on Numerous Serious Errors**

While certainly sufficient to warrant vacatur, the Arbitrator's failure to receive and review pertinent and material evidence about Alcoa's claimed expenditure is not the only serious error with the Award.

---

[5]  Indeed, Alcoa's lists have had a long history of errors. For instance, despite Alcoa's claim that these lists reflected actual out-of-pocket expenditures, it was revealed that Alcoa had received government subsidies for some of its projects. In late December 2006 (just weeks before the hearing), without explanation or supporting documents, Alcoa sent a letter to Fairchild purporting to update its indemnification demand which was lowered to take into account some subsidies it presumably received. The letter also changed other entries for claims on individual projects — again, without explanation or supporting documentation. *Compare* Roy Aff. Ex. 17 (Feb. 2006 list of claims) *with* Roy Aff. Ex. 2 (December 2006 list of claims).

[6]  The Arbitrator's approach to evidence that the parties chose to proffer or not was at best inconsistent. For example, with respect to the negotiation of certain contractual provisions regarding the scope of the indemnity, Fairchild chose to put on as a witness its general counsel, Donald Miller, who led Fairchild's deal team, but not its CEO, Jeffrey Steiner. Alcoa, similarly, only put on the leader of its deal team, Cynthia Holloway, but did not put on the senior member of that team, Barbara Jeremiah. Yet, in evaluating the testimony, the Arbitrator drew a "negative inference" from the fact that Mr. Steiner did not testify. The Arbitrator drew no such inference with respect to Ms. Jeremiah. This contrasts noticeably, of course, with the Arbitrator's position on Alcoa's ability to meet its burden of proving actual damages. On that issue, rather than draw a "negative inference" from the fact that Alcoa provided *no* evidentiary support for its claim of actual expenses, the Arbitrator gave full credit to each and every item on Mr. Lease's list.

For example, in at least one instance the Award affirmatively ignores that evidence had been presented on an issue. A central issue in the arbitration was whether the contractual phrase "workplace health or safety" encompassed certain categories of claims submitted by Alcoa, including claims for purported expenses related to the guarding of certain potentially dangerous machines. Prior to the hearing, the Arbitrator issued an Interim Decision in response to Alcoa's motion for summary judgment in which he found, *inter alia*, that this phrase was ambiguous and its meaning could not "be determined without hearing evidence as to the surrounding circumstances, including the intent and understanding of the parties, concerning this language at the time of the execution of the Agreement." Roy Aff. Ex. 18 (Interim Decision at 3). Accordingly, at the hearing, Fairchild presented two schedules that it had prepared at the time of the Agreement and which were attached to that Agreement. One schedule listed all the items that Fairchild felt fell within the relevant contractual definition. The other listed items that did not. Roy Aff. Exs. 19, 20. "Machine guarding" items (of the sort Alcoa later claimed) were listed on the schedule of items that did not fall under the relevant indemnity provision. However, in his Findings of Fact and Conclusions of Law, the Arbitrator held that "Fairchild did not present *any* contemporaneous documentary evidence showing that its personnel considered items like machine guarding to be excluded from the indemnity." Roy Aff. Ex. 5 (Award at 5; emphasis added). This is simply not true. *See, e.g.*, Roy Aff. Ex. 21 (Hearing Tr. at 2174-2176) (former Fairchild employee Michael Hodge testifying that the schedules to the Agreement were prepared in accordance with Fairchild's understanding that machine guarding was not part of the indemnity). It is one thing for an arbitrator to weigh the evidence presented. It is quite another thing for an arbitrator to ignore entirely that evidence was in the first place provided.[7]

The Award is also inconsistent. For instance, at the hearing Fairchild argued that certain claims submitted by Alcoa involved projects aimed at compliance with Alcoa's own internal

---

[7] Similarly, the Award makes no mention of the fact that Alcoa's own documents indicated that the expenses related to these projects were already discounted into Alcoa's valuation of the deal and thus were not part of the amounts for which Fairchild agreed to reimburse Alcoa. *See* Roy Aff. Ex. 23 at 13-15.

standards, which exceeded legal standards, and thus were not subject to indemnification under the Agreement.[8]  Accordingly, the Arbitrator denied one of Alcoa's claims for indemnification because the project was at least partly due to compliance with Alcoa's internal standards and "Alcoa offered no evidence to prove which portion, if any, of this expenditure was required apart from Alcoa's own standards." Roy Aff. Ex. 5 (Award at 13).  Yet, Fairchild offered evidence demonstrating that numerous of Alcoa's underlying projects involved the application of Alcoa's internal standards and Alcoa similarly offered no evidence to prove which portion, if any, of the expenses for these projects was required apart from its own standards.  Roy Aff. Ex. 22 at 60-67. The Arbitrator, however, upheld these claims in full.

Finally, the Award disregards that Alcoa admitted it materially breached important Fairchild rights under the Agreement.  In the Arbitrator's Interim Decision prior to the hearing, he determined that certain contractual provisions, which require Alcoa to provide Fairchild with adequate notice of its claims prior to incurring expenses on them, "whether . . . called 'conditions precedent' or not, . . . impose obligations on Alcoa for the material breach of which it might be barred from recovery for some part or all of its claims." Roy Aff. Ex. 18 (Interim Decision at 4). At the hearing, Fairchild presented evidence that Alcoa violated these rights for nearly all of its claimed expenses.  Moreover, *Alcoa* presented a chart that admitted that with respect to 67 items it had claimed, constituting $2,115,831 in claimed expenses, Alcoa had not provided *any* prior written notice at all to Fairchild.  Roy Aff. Ex. 15  (Hearing Tr. at 906-10, 1148-50).  The Arbitrator nonetheless awarded full credit to Alcoa for these claims.

---

[8]  For the relevant items, the Agreement limits Fairchild's liability to situations in which the sold facilities were out of compliance with legal requirements.  *See* Roy Aff. Ex. 1 (Agreement, § 11.6); Ex. 5 (Award at 13).

## CONCLUSION

For the foregoing reasons, Petitioner Fairchild respectfully requests the Court to issue an Order vacating the Arbitration Award and to grant such other relief as the Court deems proper.

Dated:   New York, New York         Respectfully submitted,
         July 2, 2007

                                    CAHILL GORDON & REINDEL LLP

                                    By: _____
                                        Adam Zurofsky
                                        Tammy L. Roy
                                        Andrew Madar
                                    80 Pine Street
                                    New York, New York  10005
                                    (212) 701-3000

                                    *Attorneys for Petitioner*