UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

---

THE FAIRCHILD CORPORATION,

                                Petitioner,

        -against-

ALCOA INC.,

                                Respondent.

07-CV-6185 (VM)

---

**PETITIONER'S MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS PETITION TO VACATE ARBITRATION AWARD AND IN <u>OPPOSITION TO ALCOA'S CROSS-PETITION TO CONFIRM</u>**

Adam Zurofsky
Tammy L. Roy
Andrew Madar
CAHILL GORDON & REINDEL LLP
80 Pine Street
New York, New York  10005
(212) 701-3000

*Attorneys for Petitioner*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

ARGUMENT .........................................................................................................................1

I. THE AWARD SHOULD BE VACATED BECAUSE THE ARBITRATOR REFUSED MATERIAL EVIDENCE REGARDING ALCOA'S PURPORTED DAMAGES ........... 1

    A. Section 10(a)(3) Applies Here Where the Arbitrator's Refusal to Hear Evidence Prejudiced Fairchild and Resulted in a Fundamentally Unfair Proceeding ............ 1

    B. There Was No Proof Introduced That Alcoa Both Incurred The Claimed Expenses *And* That It Incurred Them On Indemnifiable Projects .......................................... 2

    C. Alcoa Distorts the Record ...................................................................................... 5

II. ALCOA'S ATTEMPT TO INJECT THE "TAX BENEFIT" ISSUE INTO THE PARTIES' DISPUTE OVER THE AWARD SHOULD BE REJECTED ......................... 5

III. ALCOA IS NOT ENTITLED TO ATTORNEYS' FEES OR INTEREST ....................... 9

CONCLUSION ....................................................................................................................10

# **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Companhia de Navegacao Maritima Netumar* v. *Armada Parcel Service, Ltd.*, No. 96 Civ. 6441 (PKL), 1997 WL 16663 (S.D.N.Y. Jan. 17, 1997) ................................................................................................................ 9n

*Heavy Construction Lumber, Inc.* v. *Local 1205, International Brotherhood of Teamsters*, No. 00 Civ. 6659 (ILG), 2001 WL 984949 (E.D.N.Y. July 27, 2001) ................................................................................ 9

*Herrenknecht Corp.* v. *Best Road Boring*, No. 06 Civ. 5106 (JFK), 2007 WL 1149122 (S.D.N.Y. Apr. 16, 2007) ................................................ 10n

*Hunt* v. *Commodity Haulage Corp.*, 647 F. Supp. 797 (E.D.N.Y. 1986) ................. 10n

*Katz* v. *Feinberg*, 167 F. Supp. 2d 556 (S.D.N.Y. 2001), *aff'd*, 290 F.3d 95 (2d Cir. 2002) ................................................................................................ 7-9

*Mallory Factor Inc.* v. *West Coast Entertainment Corp.*, No. 99 Civ. 4819 (JFK), 1999 WL 1021076 (S.D.N.Y. Nov. 9, 1999) ......................................... 1, 1n

*National Casualty Co.* v. *First State Insurance Group*, 430 F.3d 492 (1st Cir. 2005) ................................................................................................ 2n

*Nitron International Corp.* v. *Golden Panagia Maritime Inc.*, No. 98 Civ. 8718 (DLC), 1999 WL 223155 (S.D.N.Y. Apr. 16, 1999) ............................... 9

*Pike* v. *Freeman*, 266 F.3d 78 (2d Cir. 2001) ............................................................ 7

*Rush* v. *Oppenheimer & Co.*, 779 F.2d 885 (2d Cir. 1985) .................................... 7, 8n

*Saudi Iron & Steel Co.* v. *Stemcor USA Inc.*, No. 97 Civ. 5976 (DLC), 1997 WL 790746 (S.D.N.Y. Dec. 23, 1997) ...................................................... 10n

*Technical Career Institutes, Inc.* v. *Local 2110, United Auto Workers*, No. 00 Civ 9786 (RCC), 2002 WL 441170 (S.D.N.Y. Mar. 21, 2002) ............. 10

*Thyssen, Inc.* v. *Calypso Shipping Corp.*, 310 F.3d 102 (2d Cir. 2002) .................. 7-8

**Page**

**Statutes**

Federal Arbitration Act

    9 U.S.C. § 10(a)(3) (2000), as amended ............................................................ 1-2

iii

The Fairchild Corporation ("Fairchild") respectfully submits this brief in further support of its petition to vacate and in opposition to Alcoa Inc.'s ("Alcoa") cross-petition to confirm.

## ARGUMENT

Fairchild's Petition seeks to vacate an Award that purports to grant millions of dollars of recovery to Alcoa on its blanket assertion that it spent over $16 million of indemnifiable expenses, but without requiring — and in fact refusing — proffered evidence of Alcoa's actual expenditures. The Arbitrator's refusal to receive material evidence on the fundamental questions of the amounts actually incurred by Alcoa, and whether such amounts were spent on indemnifiable projects, warrants vacatur of the Award. Alcoa's arguments in opposition are without merit.

### I. THE AWARD SHOULD BE VACATED BECAUSE THE ARBITRATOR REFUSED MATERIAL EVIDENCE REGARDING ALCOA'S PURPORTED DAMAGES

#### A. Section 10(a)(3) Applies Here Where the Arbitrator's Refusal to Hear Evidence Prejudiced Fairchild and Resulted in a Fundamentally Unfair Proceeding

Alcoa first argues that a § 10(a)(3) petition may only be brought by a party who proffered the evidence that was refused by the arbitrator. (Alcoa Br. at 11). Section 10(a)(3), however, places *no* restriction on which party may bring a petition thereunder. Moreover, the single case Alcoa cites, *Mallory Factor Inc.* v. *West Coast Entertainment Corp.*, 1999 WL 1021076 (S.D.N.Y. Nov. 9, 1999), does not hold that a § 10(a)(3) petition may only be brought by certain parties.[1] In fact, *Mallory* states broadly that "'if the arbitrator refuses to hear pertinent and material evidence to the prejudice of the parties, the arbitration award may be set aside.'" *Id*. at *3. Here, Fairchild *was* prejudiced by the Arbitrator's refusal to hear material evidence.

Alcoa also points to Fairchild's citation to cases in which the *petitioner*'s evidence was

---

[1] In *Mallory*, the respondent sought to vacate an award where the arbitrator had refused to permit discovery of certain work records; claimant responded that it had already produced all relevant documents. The *Mallory* court observed that it was "not clear" whether § 10(a)(3) applied in that context. *Id.* at *3.

refused. (Alcoa Br. at 11). Alcoa misses the point. In each of these cases, the party seeking to introduce the evidence faced a *negative* inference from its absence. Here, the Arbitrator credited Alcoa with the evidence that was refused. Thus, Fairchild was the party harmed and has grounds to seek vacatur.[2] It would be absurd to read § 10(a)(3) to permit only Alcoa — who *benefited* from not having to subject its proffered evidence to challenge — to bring a § 10(a)(3) motion.

A hearing where an arbitrator refuses proffered evidence from the party with the burden of proof and yet credits that party as if it had met its burden is fundamentally unfair. Alcoa's argument that the hearing was fair because "[n]o restrictions were placed on [the parties'] ability to refute the other side's evidence" (Alcoa Br. at 20) skips over the central point — Alcoa did not present evidence as to actual expenditures. Alcoa's choice not to introduce proof of damages for the vast majority of its claims is all the more noteworthy given that it purports to have had 14 volumes of evidence at its disposal. The Arbitrator's refusal to accept, yet credit Alcoa with, this evidence resulted in a fundamentally unfair hearing that warrants vacatur of the Award.

### B. There Was No Proof Introduced That Alcoa Both Incurred The Claimed Expenses *And* That It Incurred Them On Indemnifiable Projects

Alcoa's second contention is that its failure to introduce proof of damages at the hearing can be excused because it asserts "invoices were produced and were in Fairchild's possession prior to the hearing."[3] (Alcoa Br. at 12). The point is not what Alcoa may have provided in discovery, but rather what it failed to introduce, and what the Arbitrator failed to receive, into evi-

---

[2] By contrast, in *National Cas. Co.* v. *First State Ins. Group*, 430 F.3d 492, 498 (1st Cir. 2005), the court held that the arbitrators' "failure to hear evidence" did not deprive the parties of a fair hearing where the arbitrators drew a negative inference against the non-moving party for not providing certain requested documents which "offset any unfairness to [petitioner]."

[3] Alcoa misstates the record. Prior to the arbitration, Alcoa provided Fairchild with very few invoices. Moreover, as described by Fairchild's environmental attorney, those invoices were rife with inconsistencies, inaccuracies, and were a "paper heap masquerading as an accounting." (Roy Aff. Ex. 3).

dence. To recover under the Agreement, Alcoa had to prove, and the Arbitrator had to find, that Alcoa actually incurred expenses <u>and</u> that such expenses qualify for indemnification. One cannot resolve such issues without looking at each invoice. This the Arbitrator failed to do. The only "evidence" at the hearing was a six-page summary of expenses. It is inconceivable that an arbitrator would award millions of dollars to a party on the basis of six summary sheets of paper.

Alcoa does not dispute that it alone had the burden to prove its claimed damages (*i.e.,* that it actually incurred $16 million in expenses <u>and</u> incurred them on items that qualify for indemnification). Alcoa defends the Award, however, because it claims that buried in the 70 boxes of documents it produced in discovery to Fairchild was "every single invoice and receipt" for the multiple phases and parts of its over 200 separate projects. As such, Alcoa argues, its failure to identify or present these documents at the hearing "did not prevent Fairchild from attacking Alcoa's proof." (Alcoa Br. at 13). First, Alcoa's argument concedes that it did not submit its "proof of damages" at the hearing, but rather buried it somewhere in its production. Alcoa then implies that Fairchild had an obligation to sift through Alcoa's production, engage in an exercise of mind-reading to pull out the documents Alcoa was relying on for its "proof" (all the while facing Alcoa's flat refusal to identify such documents),[4] introduce those documents at the hearing itself and then refute that "proof." Such an argument belies common sense and any reasonable interpretation of the rules of evidence in or outside the arbitration context.

Alcoa further asserts that in addition to the "proof" buried in its production (that was never before the Arbitrator), it also submitted a "wealth of documentary and testimonial evidence of its damages at the arbitration hearing." (Alcoa Br. at 2). In support, Alcoa points to a sam-

---

[4] In lieu of identifying the documents supporting its damages claims in response to an interrogatory by Fairchild, Alcoa cited over 11,000 pages of largely irrelevant documentation that it gave to Fairchild during discovery. How Alcoa can claim that satisfies any burden is entirely unclear.

pling of invoices (that do not come close to adding up to the $16 million worth of alleged expenditures) and the testimony of one witness. (Alcoa Br. at 13-14). First, Fairchild is not arguing that Alcoa did not produce *some* invoices or that no invoices were introduced at trial. Rather, Fairchild's petition rests on the fact that although Alcoa has claimed over $16 million in reimbursement and the Award purports to grant Alcoa a substantial portion of its claims, since March of 2003, Alcoa has steadfastly refused to respond to Fairchild's requests for actual proof of ***all*** (not a sampling) of the expenses claimed. No person — and certainly no public company — would blindly write a check for any claimed amount without such proof.

Alcoa implies that Fairchild is merely pressing the technical point that Alcoa did not present "every single invoice" for every claim. (Alcoa Br. at 2). Fairchild is not asserting that there is only one way to prove damages.[5] That does not change the fact that the Arbitrator still must base his ruling on evidence actually submitted, not blind acceptance. The arbitration involved "204 claims, totaling more than $16.3 million." (Alcoa Br. at 5). The introduction of invoices for a handful of claims may be sufficient proof of damages on those particular few claims, but it does not constitute proof of damages for the hundreds of other claims Alcoa was granted.

Alcoa also points to the testimony of one witness, John Lease. But Mr. Lease did not provide any testimony verifying the amounts claimed or that such expenses were incurred on projects that qualify for indemnification. As set forth on pages 10-11 of Fairchild's Opening Brief, on these points, Mr. Lease could not testify.

In short, there was no evidence introduced for the vast majority of Alcoa's claims to es-

---

[5] As discussed in Fairchild's Opening Brief, prior to the hearing, Fairchild's counsel suggested one potential avenue in lieu of presenting "every single" invoice, *i.e.*, have an independent accountant verify the amounts claimed. Alcoa refused. At that time, Alcoa recognized it would need to introduce "every single" invoice and sought a stipulation from Fairchild to avoid having to do so. Yet, when Fairchild declined to stipulate, Alcoa strategically opted not to present the invoices it claims to have had ready to go.

tablish that Alcoa incurred the expenses claimed <u>and</u> incurred them on indemnifiable projects. Arbitration awards must be based on evidence. On the issue of damages, this Award was not.

### C. Alcoa Distorts the Record

Alcoa makes two additional arguments which distort the record and merit brief discussion. First, Alcoa asserts that Fairchild never raised the issue of Alcoa's failure to prove damages until the exchange of post-hearing briefs. (Alcoa Br. at 7). For the reasons set forth on pages 7-9 of Fairchild's Opening Brief, Alcoa's implication that it was unaware that the amount of asserted expenditures was a disputed issue is incredible. Moreover, the only logical point in time for a party to assert that the other has not met its burden of proof is at the close of evidence. Fairchild is not obligated to guide Alcoa prior to or during the arbitration as to how to prove its case.

Second, Alcoa seeks to make much of the fact that when it proffered the "14-volume set" of invoices to the Arbitrator post-hearing, "Fairchild itself objected." (Alcoa Br. at 2). The objection was entirely proper. Rather than submit its proof through a competent witness who could be cross-examined, Alcoa sought to deliver 14 volumes of documents *directly* to the Arbitrator *after* the hearing and end-run Fairchild's right to cross-examination. In such circumstances, the Arbitrator should have denied Alcoa's claims for lack of proof or, at a minimum, force Alcoa to introduce evidence properly, where it can be subject to the adverse party's right to challenge it through cross-examination. What the Arbitrator should not have done was to credit Alcoa with having submitted proof based only on Alcoa's blanket assertion that it *could* prove its damages.

### II. ALCOA'S ATTEMPT TO INJECT THE "TAX BENEFIT" ISSUE INTO THE PARTIES' DISPUTE OVER THE AWARD SHOULD BE REJECTED

While Alcoa claims its cross-petition is intended merely to "confirm" the Award, the truth is that Alcoa is seeking to deprive Fairchild of separate contractual offset rights that were not covered by the Award. For the reasons set forth below, to the extent the Court believes the

Award should be confirmed, despite the Arbitrator's refusal to consider pertinent evidence, that determination cannot extend so as to deprive Fairchild of its contractual rights.

The focus of the Arbitration was whether Alcoa had incurred "Fastener Environmental Liabilities" subject to indemnification under § 11.6 of the Agreement. Section 11.3(e), a separate section of that Agreement, provides in pertinent part that:

> "Notwithstanding any other provision of this Agreement, the amount of any Indemnifiable Loss for which indemnification is provided . . . shall be net of . . . any Tax Benefit actually realized as a result of such Indemnifiable Loss." [6]

Accordingly, the Agreement requires that after it has been determined that "indemnification is provided under [§ 11.6]" and the indemnifiable claims have been identified, any indemnification amount must then be netted by the tax benefits Alcoa received related to those claims. This provision makes sense: Alcoa received tax benefits (in the form of reduced tax liabilities) by virtue of expending the money for which it claims indemnification. Thus, to be made "whole" by the indemnity (and avoid a windfall at Fairchild's expense), Alcoa need only get back the net amount of cash it lost on these expenses. Fairchild's right to have the purportedly indemnifiable expenses identified in the Award netted under § 11.3(e) was not ripe until the Arbitrator had concluded which claims were indemnifiable (different tax savings apply to different expenses).

In seeking confirmation, Alcoa appears to argue that the "netting" requirement of § 11.3(e) was somehow adjudicated in connection with the Arbitration. The assertion is meritless. Nowhere in his 46-pages of decision does the Arbitrator address the "netting" requirements of § 11.3(e). Rather, the Award expressly "addresses only those matters which are in evidence before the undersigned arbitrator." (Roy Aff. Ex. 5 at 20). The netting requirements of § 11.3(e) were not among those matters. The issue was not the subject of discovery, hearing testimony or

---

[6] "Tax Benefit" is defined in § 1.132 of the Agreement as, *inter alia*: "the Tax savings attributable to any deduction, expense, loss, credit or refund to the indemnified party . . . when incurred or received."

briefing.[7]  Indeed, prior to the Award, there was no reason to believe the parties even had a dispute as to the validity or applicability of § 11.3(e).  Even now Alcoa is not asserting that it realized no tax benefits, nor that § 11.3(e) is somehow invalid.  Rather, Alcoa seems to assert that this Court, in confirmation of an Award that does not even address the issue, should deny Fairchild its bargained-for right of offset because the offset is to claims that were the subject matter of the Arbitration.  What Alcoa ignores entirely is that, by its terms, § 11.3(e) only applies *after* it has been determined that Alcoa in fact incurred indemnifiable expenses.

Nor can Alcoa argue that Fairchild should be precluded from raising the issue post-Award in an appropriate forum.  *First*, by its terms, § 11.3(e) only becomes relevant once it has been determined that the indemnification provision has been triggered and any indemnifiable claims are identified.  The determination of the corresponding tax benefits for any indemnifiable claims was contingent upon the Award and could not have been determined prior to the conclusion of the Arbitration.  *See Pike* v. *Freeman*, 266 F.3d 78, 91-92 (2d Cir. 2001) (claims not barred by *res judicata* where those claims "did not arise until the [arbitration] Award was granted").  *Second*, offset claims are generally regarded as *independent* claims.  *See, e.g., Katz* v. *Feinberg*, 167 F. Supp. 2d 556, 572 (S.D.N.Y. 2001), *aff'd*, 290 F.3d 95 (2d Cir. 2002).  *Third*, Alcoa cannot point to any prejudice that would result from addressing the offset post-arbitration since under any circumstances the calculation of tax savings would have to occur at this point in the proceedings, *i.e.*, after the allegedly indemnifiable expenses have been determined.  *See Rush* v. *Oppenheimer & Co.*, 779 F.2d 885, 887 (2d Cir. 1985); *Thyssen, Inc.* v. *Calypso Shipping*

---

[7] In fact, Alcoa has previously argued that an issue is not subject to arbitration unless and until that issue is the subject of direct discussions between the parties and mediation. (Slifkin Decl. Ex. I at 54).  To date, the "netting" required by § 11.3(e) has not been the subject of direct discussions or mediation, despite Fairchild's requests to do so.  (*Id*. Exs. Q & V).

*Corp.*, 310 F.3d 102, 105 (2d Cir. 2002) ("[T]he key to a waiver analysis is prejudice.").[8]

Finally, that the parties *did* litigate a separate "tax credit" issue under § 11.8 of the Agreement (Alcoa Br. at 22) has no bearing on whether Fairchild's rights under § 11.3(e) were addressed by the Award. To be clear, there are two tax off-set provisions in the Agreement — one that is dependent on the identity and nature of the expenses for which Alcoa is entitled to indemnification (§ 11.3(e)) and one that is not (§ 11.8). The tax credit issue under § 11.8 (a provision that involves pre-acquisition benefits that were transferred to Alcoa) was the subject of discovery, expert and factual testimony, extensive briefing, and due consideration by the Arbitrator. None of that occurred with respect to § 11.3(e), nor would it have been proper. Alcoa's attempt to conflate the two issues is just another ploy to secure a windfall.

This Court has dealt with similar attempts before. In *Katz* v. *Feinberg*, the court considered a motion to confirm an arbitration award that resolved a claim under one section of a purchase agreement between the parties. 167 F. Supp. 2d at 572. Following the award, Feinberg filed a separate arbitration to determine the amount that he was permitted to withhold from Katz pursuant to a different section of the purchase agreement. While the second arbitration proceeded, Katz moved to confirm the first award. *Id.* at 558. In considering Feinberg's right to offset the award, the court stressed the limited nature of a petition to confirm and determined that the setoff issue, which was not addressed in the award nor mentioned in the underlying arbitration, was not properly before the court. *Id.* at 572 ("'[A]ctions to confirm arbitration awards . . .

---

[8] In *Rush*, the court ruled that, despite eight months of litigation, the defendants had not waived their right to compel arbitration where the plaintiff could not demonstrate any prejudice caused by the delay or the expense of the litigation that had taken place. The court noted that "'waiver . . . may be found only when prejudice to the other party is demonstrated. Waiver is not lightly inferred and mere delay in seeking a stay of the proceedings without some resultant prejudice to a party cannot carry the day.'" *Id.* at 887.

are straightforward proceedings in which no other claims are to be adjudicated.'").[9]

Here, just as in *Katz*, Fairchild has the right to offset any indemnification owed to Alcoa in accordance with the terms of a different section of the Agreement. Fairchild has sought to discuss that issue with Alcoa (as provided for under the Agreement). To date, Alcoa has refused. Fairchild intends to pursue the issue further pursuant to the terms of the Agreement or, if needed, through litigation. Whatever the merits of Fairchild's position on the ultimate issue (*i.e.,* the amount of netting required), the process of deciding that matter must be allowed to run its natural course. Alcoa's attempt to cut-off Fairchild's rights under the cover of its motion to confirm should not be countenanced. Accordingly, even if otherwise inclined to confirm the Award, this Court (as the *Katz* court held) should refrain from ruling on the tax benefit issue under § 11.3(e).

## III. ALCOA IS NOT ENTITLED TO ATTORNEYS' FEES OR INTEREST

Alcoa's requests for attorneys' fees and pre-judgment interest should be denied.

First, there is no basis to award attorneys' fees. As even Alcoa recognizes, attorneys fees "'may be proper when a party opposing confirmation of an arbitration award refuses to abide by an arbitrator's decision without justification.'" (Alcoa Br. at 23). This applies to situations, unlike the present, "when a party refuses to abide by an arbitrator's award but does not challenge it or move [to vacate]." *Heavy Constr. Lumber, Inc.* v. *Local 1205, Int'l Bhd. of Teamsters*, 2001 WL 984949, at *9 (E.D.N.Y. July 27, 2001); *see also Nitron Int'l Corp.* v. *Golden Panagia Maritime Inc.*, 1999 WL 223155, at *4 (S.D.N.Y. Apr. 16, 1999). Here, however, Fairchild is properly pursuing its right under the Federal Arbitration Act to challenge the Award. There is,

---

[9] This holding is consistent with the limited scope of review of arbitration awards. *See, e.g., Companhia de Navegacao Maritima Netumar* v. *Armada Parcel Service, Ltd.*, No. 96 Civ. 6441 (PKL) 1997 WL 16663, at *7 (S.D.N.Y. Jan. 17, 1997) (where "the failure to grant the claims for set-off resulted not from a decision on the merits of the claims, but rather from a conclusion that the matter was not submitted for arbitration" the court ensured that the remaining claims were resolved in arbitration).

accordingly, no basis for an award of attorneys' fees. *See, e.g., Technical Career Institutes, Inc.* v. *Local 2110, United Auto Workers*, 2002 WL 441170, at *5 (S.D.N.Y. Mar. 21, 2002) (attorneys' fees improper where petition to vacate offered "colorable arguments" that, even if rejected, did not "require the conclusion that [petitioner] acted in bad faith, vexatiously or wantonly.").[10]

Second, Alcoa seeks pre-judgment interest because it asserts that Fairchild "directly interfered" with the release of the arbitration award. (Alcoa Br. at 3). This contention has no merit. Fairchild wrote to the escrow agent to make clear its position that, as the Agreement requires, any indemnification amount must be netted by any tax benefits Alcoa received. (Slifkin Decl. Ex. R). Any delay on the release of the escrow is entirely of Alcoa's creation because it has refused to date to discuss this off-set issue. Thus, Alcoa's request for interest should be denied.[11]

## CONCLUSION

For these reasons, Fairchild respectfully requests the Court to vacate the Award.

Dated:   New York, New York  
        July 24, 2007

Respectfully submitted,  
CAHILL GORDON & REINDEL LLP

By:   /s/ Adam Zurofsky  
    Adam Zurofsky  
    Tammy L. Roy  
    Andrew Madar  
80 Pine Street  
New York, New York 10005  
(212) 701-3000

---

[10] In *Herrenknecht Corp.* v. *Best Road Boring*, 2007 WL 1149122, at *4 (S.D.N.Y. Apr. 16, 2007) (Alcoa Br. at 23-24), the party against whom attorneys' fees were sought had not satisfied or contested the award and did not appear in opposition to the petition to confirm. Similarly, in *Hunt* v. *Commodity Haulage Corp.*, 647 F. Supp. 797, 799 (E.D.N.Y. 1986) (Alcoa Br. at 23), only two respondents had participated in the arbitration and none had paid the awards or appeared in the action to confirm. Alcoa's reference to cases which granted attorneys' fees *and* Rule 11 sanctions (Alcoa Br. at 24) are similarly inapplicable. *See, e.g., Saudi Iron & Steel Co.* v. *Stemcor USA Inc.*, 1997 WL 790746, at *2 (S.D.N.Y. Dec. 23, 1997) (imposing sanctions where the respondent's arguments had "absolutely no basis in law or fact"). Moreover, Alcoa has not moved for sanctions under Rule 11 (or provided safe-harbor notice).

[11] At a minimum, Alcoa should only receive interest from July 21, 2007 until the date it receives payment from the escrow agent, which could conceivably occur during the pendency of this petition.