UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In the Matter of the Arbitration Between<br><br>THE FAIRCHILD CORPORATION<br><br>        Petitioner and Cross-Respondent,<br><br>        vs.<br><br>ALCOA INC.<br><br>        Respondent and Cross-Petitioner. | ECF<br><br>07-CV 6185 (VM) |

## ALCOA INC.'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS CROSS-PETITION TO CONFIRM ARBITRATION AWARD

Evan R. Chesler
Daniel Slifkin
CRAVATH, SWAINE & MOORE LLP
  Worldwide Plaza
    825 Eighth Avenue
      New York, NY 10019-7475
        (212) 474-1000

*Attorneys for Respondent and Cross-Petitioner Alcoa Inc.*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

ARGUMENT .............................................................................................................................1

I.     THE AWARD SHOULD BE CONFIRMED ..................................................................2

        A.     Fairchild Has Failed to Demonstrate that the Award Should Be Vacated Pursuant to § 10(a)(3) of the Arbitration Act..........................................................2

        B.     Fairchild's "Tax Benefits" Argument Is Not a Basis for Vacating the Award and Is Barred by Res Judicata. ..................................................................3

II.    ALCOA IS ENTITLED TO ATTORNEY'S FEES, COSTS AND PREJUDGMENT INTEREST.................................................................................................8

CONCLUSION.........................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

Areca, Inc. v. Oppenheimer & Co., Inc., 960 F. Supp. 52 (S.D.N.Y. 1997) ...................... 2

Bin Saud v. Bank of New York, 734 F. Supp. 628 (S.D.N.Y. 1990) ................................ 5

Burmah Oil Tankers, Ltd. v. Trisun Tankers, Ltd., 687 F. Supp. 897 (S.D.N.Y. 1988) ...................................................................................................................... 5, 8

Evangelical Alliance Mission/Nihon Domei Kirisuto Kyodan v. Lockman Foundation, No. 95 Civ. 7214 (SHS), 1995 WL 688958 (S.D.N.Y. Nov. 21, 1995) .......................................................................................................................... 4

Heavy Constr. Lumber, Inc. v. Local 1205, International Brotherhood of Teamsters, No. 00 CV 6659 (ILG), 2001 WL 984949 (E.D.N.Y. July 27, 2001) ......... 9

Horphag Research Ltd. v. Henkel Corp., No. 00-Civ.-0438 (MBM), 2004 WL 117601 (S.D.N.Y. Jan. 26, 2004) ............................................................................. 4, 5

Katz v. Feinberg, 167 F. Supp. 2d 556, 559, 572 (S.D.N.Y. 2001) .................................. 6

Mallory Factor Inc. v. West Coast Entertainment Corp., No. 99 Civ. 4819 (JFK), 1999 WL 1021076 (S.D.N.Y. Nov. 9, 1999) ................................................................ 2

P.M.I. Trading Ltd. v. Farstad Oil, Inc., No. 00 Civ. 7120 (RCC), 2001 WL 38282 (S.D.N.Y. Jan. 11, 2001) .............................................................................................. 9

Pike v. Freeman, 266 F.3d 78 (2d Cir. 2001) .................................................................... 5

Saudi Iron and Steel Co. v. Stemcor USA Inc., No. 97 CIV. 5976 (DLC), 1997 WL 790746 (S.D.N.Y. Dec. 23, 1997) .......................................................................... 9

Technical Career Institutes, Inc. v. Local 2110, United Auto Workers, AFL-CIO, No. 00 CIV. 9786 (RCC), 2002 WL 441170 (S.D.N.Y. March 21, 2002) .................... 9

Tempo Shain Corp. v. Bertek, Inc., 120 F.3d 16 (2d Cir. 1997) ....................................... 2

U.S. Offshore, Inc. v. Seabulk Offshore, Ltd., 753 F. Supp. 86 (S.D.N.Y. 1990) ............. 9

**Statutes**

9 U.S.C. § 9 ........................................................................................................................ 2

9 U.S.C. § 10(a)(3) ........................................................................................................ 2, 3

Respondent and Cross-Petitioner Alcoa Inc. ("Alcoa") respectfully submits this reply memorandum of law in support of its cross-petition to confirm the June 21, 2007, Arbitration Decision and Award in <u>Fairchild Corp. v. Alcoa Inc.</u>, CPR File No. G-06-22H (June 21, 2007) (Stapleton, Arb.) (the "Award").[1]

## ARGUMENT

Throughout the arbitration proceeding, Fairchild Corporation ("Fairchild") engaged in a concerted effort to deprive Alcoa of its contractual rights. Fairchild denied any responsibility for each and every claim that Alcoa submitted, and fought over every one of those claims during an 18-month arbitration process. During the two-week arbitration hearing and in its pre- and post-hearing papers, Fairchild contended that it never agreed to pay for the types of claims Alcoa had submitted, that it was not adequately informed of any of them, and that Alcoa performed the underlying work unnecessarily and at unreasonable cost. The arbitrator rejected nearly all of Fairchild's arguments and ruled that Alcoa is entitled to payment of $12,455,585.88, of which $4,005,585.88 was to be paid from the escrow account within 30 days.

Despite Fairchild's general counsel testifying under oath that "we will abide by exactly what the judge decides", upon receiving the Award, Fairchild conjured up two additional reasons not to pay. (Tr. 2468:14, Declaration of Evan R. Chesler in Support of Alcoa Inc.'s Cross-Petition to Confirm Arbitration Award Ex. A.) Fairchild now asserts that the arbitrator's unconditional award must be vacated due to alleged misconduct by the arbitrator or, in the alternative, reduced to account for supposed "tax benefits" that were never mentioned before and

---

[1] In support of its cross-petition to confirm the Award, Alcoa necessarily addresses Fairchild's contention that the Award should be vacated. Alcoa addressed that argument more fully in its July 17 brief in opposition to Fairchild's petition to vacate the Award ("Alcoa's Brief" or "Alcoa Br."), and herein addresses only those additional arguments set forth in Fairchild's brief in further support of its petition to vacate the Award and in opposition to Alcoa's cross-petition to confirm the Award (Fairchild's "Opposition Brief" or "Opp. Br.").

1

that relate to the very same claims that were the subject of the parties' 18-month arbitration. Fairchild's latest effort to avoid liability should be rejected. The Award should be confirmed and judgment entered, and Alcoa should be awarded prejudgment interest, attorney's fees and costs.

## I. THE AWARD SHOULD BE CONFIRMED

When a party to an arbitration moves to confirm an arbitration award, the court "<u>must</u> grant such an order unless the award is vacated, modified, or corrected". 9 U.S.C. § 9 (emphasis added). Fairchild falls far short of meeting its heavy burden of showing that the Award should be vacated. Accordingly, the Award should be confirmed and judgment entered.

### A. Fairchild Has Failed to Demonstrate that the Award Should Be Vacated Pursuant to § 10(a)(3) of the Arbitration Act.

Fairchild's argument that the Award should be vacated relies upon misstatements of the law and of the facts. <u>First</u>, Fairchild continues to distort the language and intent of § 10(a)(3) of the Federal Arbitration Act ("FAA"). Put simply, that provision addresses cases where a party was unfairly denied the opportunity to present its case, as even the cases cited by Fairchild make clear. <u>See, e.g.</u>, <u>Tempo Shain Corp. v. Bertek, Inc.</u>, 120 F.3d 16, 20 (2d Cir. 1997) (arbitrators "must give each of the parties to the dispute an adequate opportunity to <u>present its evidence and argument</u>" (emphasis added) (internal quotation marks and citation omitted)). It is not, as Fairchild would have it, an avenue for collateral attacks on an opposing party's evidence. <u>See</u> <u>Mallory Factor Inc. v. W. Coast Entm't Corp.</u>, No. 99 Civ. 4819 (JFK), 1999 WL 1021076, at *2-*4 (S.D.N.Y. Nov. 9, 1999). Indeed, Fairchild has not cited a single case in which an arbitration award was vacated under § 10(a)(3) on a sufficiency-of-the-evidence basis. Fairchild's petition to vacate therefore relies upon a reading of the FAA that is not supported by the plain words of the statute and has been rejected by the courts. <u>See, e.g.</u>, <u>Areca, Inc. v.</u>

2

Oppenheimer & Co., Inc., 960 F. Supp. 52, 55 (S.D.N.Y. 1997) ("It is well settled that arbitrators are afforded broad discretion to determine whether to hear evidence").

Second, contrary to Fairchild's repeated misstatement of the record (as well as its misrepresentation of Alcoa's arguments in opposition to vacatur[2]), Alcoa provided ample evidence at the hearing that the amounts it claimed in indemnification were actually spent and that they were spent on indemnifiable projects. That evidence consisted of invoices, receipts, summary charts and related documents, as well as hours of live testimony.[3] (See Alcoa Br. at 13-16 and citations therein.) Therefore, even if § 10(a)(3) could be used to attack the sufficiency of Alcoa's evidence (which it cannot), Fairchild's petition to vacate the Award must fail.

### B. Fairchild's "Tax Benefits" Argument Is Not a Basis for Vacating the Award and Is Barred by Res Judicata.

Although it is not a basis for vacating the Award, Fairchild contends that the Award must be reduced to account for purported tax benefits that--as Fairchild concedes (see Opp. Br. at 7)--relate to the exact same claims that were the subject of the arbitration. Fairchild has even gone so far as to instruct the escrow agent that "no funds should be dispersed from the Escrow Account at this time" because of the supposed tax benefits owed to Fairchild. (Ltr. from A. Zurofsky to J. Osborn, dated June 29, 2007, Slifkin Decl. Ex. U (emphasis added).) Alcoa

---

[2] Fairchild asserts, for example, that Alcoa "concedes that it did not submit its 'proof of damages' at the hearing, but rather buried it somewhere in its production". (Opp. Br. at 3.) Alcoa made no such concession. (See, e.g., Alcoa Br. at 13-16 (noting that Alcoa's proof of damages included "invoices, receipts and related documents submitted to Fairchild before the arbitration began, during discovery and during the hearing", as well as extensive testimonial evidence (emphasis added)).)

[3] Fairchild contends that "Mr. Lease did not provide any testimony verifying the amounts claimed or that such expenses were incurred on projects that qualify for indemnification". (Opp. Br. at 4.) As Alcoa already pointed out (Alcoa Br. at 14-15) that contention is flatly contradicted by the record. Mr. Lease testified, for example, that amounts appearing on a chart showing each and every project for which Alcoa sought indemnification represented "funds we had spent for the project". (Id. (quoting Tr. at 986:2-6, Slifkin Decl. Ex. J).)

therefore requests that judgment be entered in the amount required by the Award (plus prejudgment interest, attorney's fees and costs).

During the arbitration, the same claims for which Fairchild now seeks a tax benefits reduction were reviewed in exacting detail. For each and every claim, Alcoa presented documentary and testimonial evidence (including extensive expert evidence) showing when the underlying work was performed, exactly what work was performed, where it was performed, the legal basis for the work (i.e., the applicable environmental, health or safety law), how much Alcoa had spent and how much it was seeking in indemnification. Any and all issues concerning the nature and amount of Alcoa's claims--including any purported tax benefits adjustment of those amounts--could have and should have been raised during the arbitration. Fairchild is not entitled to reopen the arbitration because it just thought of a new defense to those same claims a few days after receiving what, for Fairchild, was an unfavorable Award.

Alcoa seeks to avoid the situation faced by respondent Cognis Corporation in Horphag Research Ltd. v. Henkel Corp., No. 00-Civ.-0438 (MBM), 2004 WL 117601 (S.D.N.Y. Jan. 26, 2004). In that case, Cognis prevailed in an arbitration against Horphag relating to sales and research agreements between the companies. Id. at *1. After this court confirmed the arbitration award and entered judgment, Horphag notified Cognis that it was deducting a $330,000 "offset" from the award for payments allegedly owed by Cognis relating to the parties' research agreement. Id. at *2. Cognis moved for specific performance of the arbitration award, reasoning that the purported offset was barred by res judicata as a result of the arbitration proceeding. Id. This court agreed, noting that the offset claim related to the same claims that were adjudicated in the arbitration, and therefore could have--and should have--been brought in that proceeding. See id. at *2, *5-6; see also Evangelical Alliance Mission/Nihon Domei

4

Kirisuto Kyodan v. Lockman Found., No. 95 Civ. 7214 (SHS), 1995 WL 688958, at *4 (S.D.N.Y. Nov. 21, 1995) ("res judicata bars not only claims that were raised but also claims that could have been raised"); Bin Saud v. Bank of N.Y., 734 F. Supp. 628, 632 (S.D.N.Y. 1990); Burmah Oil Tankers, Ltd. v. Trisun Tankers, Ltd., 687 F. Supp. 897, 899 (S.D.N.Y. 1988).[4] Here, as in Horphag, the losing party has prevented the prevailing party from obtaining payment on an arbitration award because of a purported offset right that could and should have been raised in the underlying arbitration. As in Horphag, that argument is barred by res judicata.

Fairchild tries to avoid the preclusive effect of the arbitration by portraying the proceedings as concerning only the narrow issue of "whether Alcoa had incurred 'Fastener Environmental Liabilities' subject to indemnification". (Opp. Br. at 6.) The tax benefits issue, Fairchild argues, relates to a "separate section of that Agreement" and could not have been raised in the underlying arbitration. (Id. at 6-7.) That argument is untenable.

First, as Fairchild well knows, the Arbitration addressed not only whether Alcoa's claims were subject to indemnification, but also the amounts to which Alcoa was (or was not) entitled. (See Fairchild's Pet. to Vacate at ¶¶ 5-6 ("Fairchild disputes the validity and amount of each of [Alcoa's] claims" (emphasis added)); Alcoa Br. at 22.) The bottom-line question before the arbitrator was this: What, if anything, does Fairchild owe Alcoa for the Indemnifiable Losses that Alcoa has claimed? If Fairchild believed that those Indemnifiable Losses were to be reduced pursuant to § 11.3(e), then the time to raise that argument was when the amount of those

---

[4] Res judicata does not, however, bar claims that are "related in neither time nor origin" to the claims already adjudicated, as expressed in Pike v. Freeman, 266 F.3d 78, 92 (2d Cir. 2001), a case cited by Fairchild. The court in Pike therefore held that Pike's already arbitrated breach of contract claims against Freeman did not bar Freeman from later seeking indemnification from Pike for claims that arose after the award. Id. If Alcoa had received any tax benefits relating to its claimed expenditures, those benefits would have arisen at or around the time of the expenditures (and would not have been contingent upon the arbitration award). In other words, unlike the situation in Pike, the purported tax benefits relate in both time and in origin to the already arbitrated claims.

Indemnifiable Losses was being arbitrated. But Fairchild did not raise that argument during the arbitration--not during discovery, not in its pre-hearing briefs, not during the nine-day hearing and not in its hundreds of pages of post-hearing papers.

Second, Fairchild's attempt to divorce the tax benefits issue from the issues already arbitrated by stating that it arises under a "separate" and "different" section of the Agreement is both wrong and irrelevant. (Opp. Br. at 6-9.) Both the tax benefits provision that Fairchild now points to (§ 11.3(e)) and the general environmental indemnity provision (§ 11.6), as well as the tax credit provision (§ 11.8)--which was a subject of the arbitration hearing and under which the Award was reduced by over a million dollars--are all components of Article XI of the Agreement, titled "Indemnification". (Agreement § 11, Roy Aff. Ex. 1.) And regardless of where those provisions lie (and here they all lie within Article XI), they plainly deal with the same issue--the amount of Indemnifiable Losses that Alcoa is entitled to recover.[5]

Third, nothing in the Agreement prevented Fairchild from raising the tax benefit issue during the arbitration when the parties were litigating over precisely the underlying claims to which the benefits purportedly relate. (See Opp. Br. at 6.) Fairchild is simply wrong when it asserts that, by its terms, § 11.3(e) prevented Fairchild from raising that issue until after it was determined that Alcoa incurred indemnifiable expenses.[6] (See Opp. Br. at 7.) For one, that

---

[5] The situation here is therefore unlike that in the case cited by Fairchild, Katz v. Feinberg, where the underlying arbitration related to the propriety of an outside auditor's valuation under section 2(b) of the parties' purchase agreement, whereas the purported offset right related to litigation expenses and was set forth in section 8(d) of that agreement. See 167 F. Supp. 2d 556, 559, 572 (S.D.N.Y. 2001). The two provisions at issue in Katz were factually distinct and, indeed, by the time of the Katz opinion, the parties already were engaged in a separate arbitration over the litigation expenses. See id. at 572.

[6] Fairchild contends that the Agreement requires that "after it has been determined that 'indemnification is provided under [§ 11.6]'", any indemnification amount "must then be netted by the tax benefits Alcoa received". (Opp. Br. at 6 (emphasis added).) What the Agreement actually says is that "the amount of any Indemnifiable Loss for which indemnification is

6

argument proves too much, inasmuch as <u>all</u> damages are contingent upon a finding of liability. Under Fairchild's logic, liability and damages could never be determined during the same trial.

Moreover, and significantly, the terms of § 11.3(e) are nearly identical to § 11.8, under which Fairchild <u>did</u> raise a defense during the arbitration, and under which the arbitrator reduced the damages by over a million dollars.  (<u>See</u> Award at 18-19, 21-22, Roy Aff. Ex. 5; <u>compare</u> § 11.3(e) ("[T]he amount of any Indemnifiable Loss for which indemnification is provided under this Article XI shall be net of . . . any Tax Benefit actually realized as a result of such Indemnifiable Loss") <u>with</u> § 11.8 ("[Fairchild's] indemnification obligations under Section 8.5 and this Article XI shall be credited by the net cumulative amount of [] any Tax Benefits recognized by [Alcoa] . . . ."), Roy Aff. Ex. 1.)  Indeed, certain of those § 11.8 tax credits were even contingent upon future events, but Fairchild nevertheless was able to raise that issue, and the arbitrator awarded Fairchild conditional tax credits.  (<u>See</u> Award at 18-19, Roy Aff. Ex. 5.) Therefore, even if some portion of Fairchild's purported tax benefits under § 11.3(e) were contingent upon future events, that would not have prevented Fairchild from raising the issue or the arbitrator from ruling on it.  If the issue had been raised during the arbitration, Alcoa would have been able to counter Fairchild's arguments with its own evidence and have it heard at the same time that the parties were engaged in a claim-by-claim analysis before the Arbitrator. Instead, Fairchild waited until it lost the arbitration and then used this pretextual basis for further delaying payment of indemnifiable expenses Alcoa began incurring years ago.

Finally, having spent the previous four-plus years denying all of Alcoa's claims and subjecting Alcoa to the time and expense of mediation and arbitration, Fairchild argues that

---

provided under this Article XI shall be net of . . . any Tax Benefit actually realized as a result of such Indemnifiable Loss". (Agreement § 11.3(e), Roy Aff. Ex. 1.)  Contrary to Fairchild's suggestion, there is no temporal language (such as "after" or "must then") in § 11.3(e), nor does that section refer to indemnifiable losses under a separate and distinct § 11.6.

7

"Alcoa cannot point to any prejudice" in having to engage in a new battle over the same claims that were just fully arbitrated. (Opp. Br. at 7.) Fairchild may have its own reasons for engaging in protracted litigation.[7] Alcoa, however, should not have to incur the costs of securing its indemnity rights one step at a time. (See Ltr. from A. Zurofsky to J. Osborn, dated June 29, 2007, at 1, Slifkin Decl. Ex. U ("[T]he arbitration award at issue represents only one step in, but not a complete resolution of, the question of how much Alcoa is entitled to out of the Escrow Account"); see also id. at 1 n.1 ("[T]he determination of the arbitrator shall be binding on the parties, not on the Escrow Agent").) It is exactly that piecemeal approach to litigation that the doctrine of res judicata was meant to address. See, e.g., Burmah Oil Tankers, 687 F. Supp. at 899 ("Res judicata . . . prevents splitting a cause of action and the attendant waste of judicial resources [and] increased burdens on litigants").[8]

## II.   ALCOA IS ENTITLED TO ATTORNEY'S FEES, COSTS AND PREJUDGMENT INTEREST

Fairchild argues, without any basis in law or in logic, that its failure to abide by the Award does not warrant a grant of attorney's fees and costs because Fairchild petitioned to

---

[7] In May of 2006, Fairchild contracted away its ability voluntarily to fulfill its indemnity obligations to Alcoa by obtaining a $30 million loan that is secured, in part, by Fairchild's interest in the escrow account. (See The Fairchild Corp., Current Report (Form 8-K), at Item 1.01 (May 3, 2006), available at http://www.sec.gov.) Fairchild would have been in default of that loan if it voluntarily settled its dispute with Alcoa for more than $2 million (which was only a fraction of Alcoa's claims). (See id. at Ex. 10.1 §§ 1.01, 8.01(g).) Further, it appears that Fairchild will be in default of that loan if a judgment or arbitration award is entered against it in excess of $2 million and that judgment or award is not vacated or stayed within 45 days. (Id.) That loan agreement shows the lengths to which Fairchild will go to avoid paying Alcoa, and it is a powerful motive for Fairchild to petition this Court to vacate the award (and, if it loses, to appeal this Court's decision), even if, as is the case, its arguments are unsupported by the facts and the law. That, we submit, is telling evidence to support prompt enforcement of the Award and payment of Alcoa's attorney's fees and costs incurred in this post-arbitration litigation.

[8] In its brief in support of its petition to vacate, Fairchild further argued that the Award was based on purported "serious errors". (Petitioner's Br. at 12-14.) Alcoa previously demonstrated that "serious error" is not a ground for vacating an arbitration award and that, in any event, what Fairchild claimed were "errors" were not errors at all. (Alcoa Br. at 16-19.) Fairchild has not raised its "serious error" argument again in its Opposition Brief.

vacate that Award. (Opp. Br. at 9-10.) The question, however, is not whether Fairchild went through the motions of challenging the Award in court, but whether that challenge--and, hence, its failure to abide by the Award--was without justification. See, e.g., P.M.I. Trading Ltd. v. Farstad Oil, Inc., No. 00 Civ. 7120 (RCC), 2001 WL 38282, at *4 (S.D.N.Y. Jan. 11, 2001) (awarding attorney's fees where there was "no legitimate basis for contesting the confirmation of the arbitration award"); Saudi Iron & Steel Co. v. Stemcor USA Inc., No. 97 CIV. 5976 (DLC), 1997 WL 790746, at *3 (S.D.N.Y. Dec. 23, 1997) ("Because Stemcor's refusal to abide by the arbitrator's award was without justification, Saudi may recoup the attorneys' fees and costs incurred in bringing the petition to confirm those awards"); U.S. Offshore, Inc. v. Seabulk Offshore, Ltd., 753 F. Supp. 86, 92-93 (S.D.N.Y. 1990).[9]

       Fairchild has not raised a colorable argument for vacating the Award. Its refusal to abide by the Award (and its active interference with the escrow agent) is without justification. Fairchild's petition relies upon a misstatement of the law and of the facts, and has served only to delay Alcoa's recovery, burden Alcoa with additional attorney's fees and waste the Court's resources. Accordingly, an award of attorney's fees and costs is warranted. See U.S. Offshore, 753 F. Supp. at 92 ("Seabulk's arguments here appear to have been motivated by a desire to forestall complying with the award, a problem courts have encountered before in dealing with litigants who lose in arbitrations").[10]

---

[9] Fairchild contends that cases in which a court awarded attorneys fees and ordered Rule 11 sanctions are "inapplicable". (See Opp. Br. at 10 n.10.) That is wrong. There is no requirement that a party move for sanctions to be entitled to attorney's fees, and Fairchild is not immune to paying attorney's fees simply because Alcoa has refrained from moving for sanctions.

[10] This is not a case, like those Fairchild cites, where a party, amidst no other evidence of bad faith, raised incorrect but colorable arguments for vacatur. See Technical Career Insts., Inc. v. Local 2110, United Auto Workers, AFL-CIO, No. 00 CIV. 9786 (RCC), 2002 WL 441170, at *4-*5 (S.D.N.Y. March 21, 2002); Heavy Constr. Lumber, Inc. v. Local 1205, Int'l Bhd. of Teamsters, No. 00 CV 6659 (ILG), 2001 WL 984949, at *9-*10 (E.D.N.Y. July 27, 2001).

Further, Fairchild does not deny the Second Circuit's presumption in favor of prejudgment interest.  Instead, Fairchild contends that it blocked the release of funds from the escrow account (even though the Award unambiguously requires that "$4,005,585.88 [] be paid from the Escrow Account payable in full within thirty days") because Alcoa refused to engage in further discussions about claims that already were fully arbitrated.  (Opp. Br. at 10.)  In other words, Fairchild blames Alcoa.  That response is without merit, and Alcoa is entitled to prejudgment interest.

## CONCLUSION

For the foregoing reasons, Alcoa respectfully requests that the Award be confirmed and judgment entered in the amount of $12,455,585.88 ($8,450,000 to be satisfied by the reserve and $4,005,585.88 to be paid from the escrow account), plus prejudgment interest, attorney's fees and costs.

August 3, 2007

>Respectfully submitted,
>
>CRAVATH, SWAINE & MOORE LLP,
>
>by
>              s/Evan R. Chesler
>     Evan R. Chesler
>     Daniel Slifkin
>     Members of the Firm
>
>     Attorneys for Respondent and Cross-
>     Petitioner Alcoa Inc.
>         Worldwide Plaza
>           825 Eighth Avenue
>              New York, NY 10019-7475
>                 (212) 474-1000